### GIVENS et al. v. CHANDLER.
### No. 1048.

Court of Appeal of Louisiana. First Circuit.
June 30, 1932.

Harvey E. Ellis and Frank B. Ellis, both of Covington, for appellants.

Lindsay McDougall, of Covington, for appellee.

MOUTON, J.

Plaintiffs sold to defendant lot No. 11 in Madisonville, in July, 1928, with the following reservation in the deed of sale: "The said vendors herein reserve the right to an undivided one-half interest in and to the artesian well, and the right to secure water therefrom, situated on the ground herein sold, for the use and benefit of the adjoining property (lot No. 12 of said square), which reservation the said purchaser grants, and accepts title to this property with this clause and understanding."

A pipe was laid by plaintiffs from lot 12, where they had a dwelling house to the artesian well to draw water therefrom as was reserved to them in their transfer of title to defendant. This pipe was connected with the well, as was customary with other wells in the vicinity. Defendant saw when the connection was made, urged no objection, and allowed plaintiffs to use it for more than one year without protest.

Defendant broke or tore the pipe up, and threw it in plaintiffs' yard.

Some time thereafter defendant refused to allow plaintiffs to reconnect the pipe to the well, upon which plaintiffs saw their attorney to have conditions re-established, if possible. Messrs. Ellis and Ellis, counsel for plaintiffs, wrote Mr. McDougall, attorney for defendant, for the re-establishment of the connection.

In reply thereto, Mr. McDougall wrote Messrs. Ellis and Ellis that he had written the defendant, Mr. Chandler, that he had no right to disconnect the pipe, as he had created a servitude on his property and could not object to the connection of the pipe with the well by plaintiffs, owners of the adjoining lot. Later, in answer to another letter from plaintiffs' counsel, Mr. McDougall wrote that Mr. Chandler, defendant, had informed him several weeks before that he had reconnected the water pipe.

Despite these statements of defendant's counsel, and at a time subsequent to the date of these letters, defendant again objected to allow the reconnection of the pipe to the well.

It seems that defendant took that step on the advice of another counsel, who was of the opinion that plaintiffs had the right to go on the property of defendant to draw water and to carry it to their premises, but could not, under their deed of sale, attach a pipe to the well for transmission of water to the adjacent lot.

Mr. McDougall, according to the statement in his brief, seems now to be in doubt as to whether plaintiffs had a right to make a reconnection of the pipe to the well. He doubts that plaintiffs have such a right under the provisions of articles 771–774 and 777, Civ. Code.

Article 771 says: "When a servitude is established everything which is necessary to use such servitude is supposed to be granted at the same time with the servitude."

The character of the servitude in question must be considered in order that we may determine if it does not come within the provisions of that article of the Code.

Plaintiffs, in their act of sale in the clause therein stipulated for the establishment of the servitude, say that the vendors herein "reserve the right to an undivided one-half interest in the artesian well to secure water therefrom," etc. The very fact that one-half of the water of an artesian well was reserved indicates very clearly that the reservation was not intended to secure to the vendors the mere right of going to the well to draw a few buckets of water for the benefit of the adjoining property. It is shown, besides, that the pipe was adjusted in the presence of defendant, who did not urge the slightest objection to its installation. The fact is that to his knowledge, and unquestionably for a period of one year and one-half, the pipe remained connected before it was taken down by defendant. It also appears that it was properly connected, and was installed according to the custom which prevailed in Madisonville in the adjustment of pipes to those artesian wells for the benefit of adjacent properties.

The wording of the reservation to which we have referred, the establishment of the servitude according to the custom of the place, the acquiescence of defendant in its establishment by means of a pipe connected with the well, show very clearly that defendant granted the servitude with the understanding that the water in that artesian well would be applied and drawn to plaintiffs' adjoining property by means of a connecting pipe. The pipe was therefore necessary for the "use" of the servitude, and the right to connect it with the well must be "supposed," under the provisions of article 771, Civil Code, referred to by defendant, to have been granted at the same time with the servitude.

Article 774, cited by counsel for defendant, provides for the entry of workmen on the estate owing the servitude, and the other, article 777, refers to cases where the primitive assignment has become more burdensome to the servient estate, etc., which involve questions not presented here; they are therefore inapplicable.

Plaintiffs are suing in damages for $1,240 for loss of the sale of their property ascribed to their inability to obtain water by means of a pipe, for loss of rent thereof for the same

reason, for worry and annoyance, and for attorney's fees.

A preliminary injunction, which was issued by the court prohibiting defendant from interfering with plaintiffs in replacing the pipe necessary for the drawing of water from the well, was made absolute on the merits, but the demand in damages was rejected.

### Plaintiffs' Appeal.

■ Article 1934, Civ. Code, reads, as follows: "Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, * * * under the following exceptions and modifications."

These modifications are expressed in paragraphs 1 and 2 which follow.

When the debtor is guilty of no fraud or bad faith, he is liable for damages contemplated or which might have been reasonably contemplated at the time of the contract, but, when there is bad faith, that is, when there exists a designed breach of the contract from a motive of interest and ill will, the debtor in that case is liable, not only for damages which might have been foreseen, but also such as are the immediate and direct consequence of the breach of the contract, as is provided for in paragraph 2 of that article.

In this case the contract was for the transmission of water to plaintiffs' adjacent property, and was clearly not for the payment of money. It is well shown that the pipe was broken and thrown over the fence into plaintiffs' lot without any justification whatsoever. There was therefore a designed breach of the contract which arose from "some motive of interest or ill will."

The defendant is therefore responsible under paragraph 2 of article 1934, Civ. Code, for the immediate and direct consequence of the breach of that contract.

In the case of Dempsy Eatman v. New Orleans Pacific Railway Co., 35 La. Ann. 1018, the railway company had obligated itself to build roads and crossings on plaintiff's plantation. The court held that, as the right of way had been granted on the express stipulation that these crossings would be erected, the company would be held to its contractual obligations, and would be mulcted in damages for their violation. It held, however, that the attorney's fees were not recoverable in an action for damages when the act complained of is not tainted by fraud or malice.

Here, there was a clear violation of the contract, in bad faith from a motive of "interest or ill will," and the act complained of was certainly "tainted by fraud or malice,"

which entitles plaintiffs to attorney's fees under Eatman v. New Orleans Pac. Ry. Co., 35 La. Ann. 1018, and C. C. art. 1934.

In the case of Mary D. Cooper v. Capel, 29 La. Ann. 213, where defendant had committed a trespass by forcibly taking possession of several bales of cotton, and where the suit was to recover damages for alleged wrongs to person and property, the court held that the attorney's fees were recoverable as part of the expense to which plaintiff had been subjected by the unlawful acts of defendant.

In this case the defendant, in breaking up the pipe, and thus disconnecting it with plaintiff's property, committed a trespass or quasi offense against the plaintiffs, being an invasion of their property rights. In this suit, which is for damages for a wrong committed against them, attorney's fees are recoverable, as was held in the case of Cooper v. Capel, supra.

In deciding that case, the court referred in support of its conclusion to the case of Dyke v. Walker, 5 La. Ann. 519, in which it was held that attorney's fees were recoverable against a party seizing the property of another as expenses incurred by the plaintiffs in consequence of the seizure of their property. The right to recover attorney's fees for the illegal seizure of the property belonging to another has been recognized in many cases. In the instant case, defendant did not resort to any legal method of procedure, but flagrantly destroyed the property of the plaintiffs, thereafter refused to allow the pipe to be reconnected, and forced these plaintiffs to employ counsel to obtain a restoration of their property rights.

If a plaintiff be allowed attorney's fees incurred for the protection of his rights, in an illegal seizure of his property, a fortiori should he be granted attorney's fees as expenses for the enforcement of his rights where a violent trespass has been committed on his property rights.

Plaintiffs are asking attorney's fees for $150 which the evidence shows they have obligated themselves to pay their attorneys in these proceedings, which we hold they are entitled to recover. As to the other damage claimed by plaintiffs, we find that they were properly rejected for want of sufficient proof.

It is therefore ordered, adjudged, and decreed that, in so far as the judgment denies the attorney's fees, it be and is hereby annulled and reversed; and it is further ordered and decreed that plaintiffs have judgment against defendant for attorney's fees in the sum of $150, with interest thereon from judicial demand at the rate of 5 per cent. per annum; and, in other respects, the judgment be affirmed, defendant to pay all costs of suit.