84 So.2d 863 (1956)
John B. SMALLPAGE
v.
WAGNER & WAGNER et al.
No. 20601.
Court of Appeal of Louisiana, Orleans.
February 6, 1956.
John E. Jackson, Baldwin J. Allen, New Orleans, for defendants-appellants.
Donnaud & Buckley, New Orleans, for plaintiff-appellee.
McBRIDE, Judge.
Wagner & Wagner, a commercial copartnership (hereinafter termed "defendant"), operates the business of men's tailor in the City of New Orleans. On or about July 28, 1954, plaintiff placed a verbal order with defendant for an oxford grey suit, and during August of 1954, probably on August 30, he placed a verbal *864 order with defendant for a brown cashmere suit and a sport coat and slacks. The defendant agreed to make all of said garments for plaintiff for the agreed price of $664.35. The defendant contends that there was no specified time for delivery, but we are convinced that the understanding was that plaintiff was to get his clothes "in plenty of time for fall wear," and we might say here that the word "fall" in the sense used in the testimony would be generally understood to include the months of September, October and November. On September 24, 1954, an agent of defendant called on plaintiff and secured from him a cash advance of $400 on the contract price, this agent making a representation that the clothing which plaintiff had ordered was "in work" and would be ready for a fitting in a few days.
The clothing was not made ready "for a fitting in a few days." It was not until November 2 or 3 that a basted fitting was made which did not include the slacks. A basted fitting as we understand it from the testimony is made when the garments are only partially finished, such as the coat having no sleeves, lapel, etc. Plaintiff was informed by the agent of defendant who made the basted fitting that plaintiff could expect his clothes in a few days.
Both prior to the date the fitting was made and also subsequent thereto plaintiff made many and periodic attempts to secure delivery of his clothing but to no avail, and the record tends to show that the defendant was always able to find some excuse for putting off the plaintiff in his demands. Finally, plaintiff becoming weary and feeling that he had waited a sufficient time for the defendant to perform the contract to tailor the clothes, it then being the third and last month of the fall season, demanded the immediate delivery of the garments or the return of his money.
Defendant was formally placed in default by a telephone call and also by registered letter from plaintiff's attorney on November 12, 1954, and was given until November 16, 1954, in which to make delivery of plaintiff's order or to return the $400 payment. Upon defendant's failure to do either plaintiff filed this suit on November 18, 1954. He seeks to recover from Wagner & Wagner and its component partners in solido the amount of the cash advance and also $300 for damages allegedly sustained by reason of defendant's breach of the contract.
The defendants answered plaintiff's suit and categorically denied the allegations of each and every paragraph thereof, but subsequently they filed a supplemental answer and reconventional demand, which, to say the least, is entirely inconsistent with the general denial made in the answer. In the supplemental answer and reconventional demand the defendants alleged that the clothing was ready for delivery on November 19, 1954, but that the plaintiff refused to accept it. Wagner & Wagner prayed for a judgment against plaintiff for $264.35, the alleged balance due on the contract. We may mention here that the allegation that plaintiff refused delivery of the clothing on November 19, 1954, is clearly not in keeping with the facts of the case. The truth is that the garments were never tendered to plaintiff.
After trial the lower court rendered judgment for plaintiff not only for the $400 advanced to defendant, but also for $100 for plaintiff's attorney's fees. The reconventional demand was dismissed. Defendants have appealed from the judgment and in an answer to the appeal the plaintiff prays that the judgment in his favor be increased to the sum of $700.
It is a well-known fact that the well-dressed male wears clothing of different weights and styles during the various seasons of the year, and we believe the condition of the contract calling for delivery of the garments in time for fall wear was of the essence of the contract, for if the garments were not seasonably delivered, they would not serve the purpose for which plaintiff had purchased them. We can say, without going into a long recital of the evidence, that it abundantly appears that defendant made only a half-hearted attempt to fill plaintiff's order and this *865 probably because of the fact that defendant was under financial stress and strain. For instance, the $400 advance was secured from plaintiff on the misrepresentation by defendant's agent that the clothing was "in work" and would be ready for a fitting in a few days. On cross-examination defendant's agent was forced to admit that at that time the material for the oxford grey suit was en route back to the New York suppliers, Milbank, Leaman & Company, delivery having been refused by defendant, and we gather this was because defendant was unable to meet the collect charges on the shipment. The brown cashmere suiting had not been received by defendant and the material for the sport coat had not even been ordered. Surely plaintiff was well within his rights in placing defendant in default at the time he did.
The defendants make the contention that whereas there is no prayer for the annulment of the contract, there can be no restoration of the amount plaintiff paid on account. Defendants, as authority, cite the case of Bossier's Heirs v. Jackson, 114 La. 707, 38 So. 525, but a reading thereof shows that it is entirely inappropriate to the legal question raised. We are also cited to Hart v. Adler, 19 La.Ann. 301, the syllabus of which reads, thus:
"The Court will not give judgment for the return of the price paid for goods, on account of the nondelivery by defendant, until plaintiff seeks to annul the contract for non-compliance by the defendant with its provisions."
Our careful analysis of Hart v. Adler, supra, discloses that all the Court held was that the plaintiff who sought to annul the contract for non-compliance on the part of defendant must first place the defendant in default before the purchase price could be restored to him.
In the instant case the defendant was placed in mora and was given until November 16, 1954, to make delivery of plaintiff's order or to return his money, but without avail, and we know of no rule of law which would prevent the plaintiff in these circumstances from recovering, in a suit such as this, the amount he has advanced to defendant on the contract which defendant breached. The contract terminated upon plaintiff's making the formal default and we do not think that he must pray for a technical rescission.
According to Article 2046, LSA-C.C., a resolutory condition is implied in all commutative contracts.
Article 2045, LSA-C.C., provides:
"The dissolving condition is that which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed.
"It does not suspend the execution of the obligation; it only obliges the creditor to restore what he has received, in case the event provided for in the condition takes place."
The defendants complain bitterly of that part of the judgment assessing against them the sum of $100 representing plaintiff's attorney's fees. Their argument is that whereas the record is devoid of testimony either proving that Wagner & Wagner was in bad faith or had attempted to defraud plaintiff of anything, the item of attorney's fees is not assessable as damages.
LSA-C.C. art. 1930 dealing with the payment of damages due by the party who violates the obligations of a contract recites:
"The obligations of contract (contracts) extending to whatsoever is incident to such contracts, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default."
Article 1934, LSA-C.C., contains the following provisions:
"Where the object of the contract is any thing but the payment of money, the damages due to the creditor for *866 its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:
* * * * * *
2. When the inexecution of the contract has proceeded from fraud or bad faith, the debtor shall not only be liable to such damages as were, or might have been foreseen at the time of making the contract, but also to such as are the immediate and direct consequence of the breach of that contract; but even when there is fraud, the damages can not exceed this."
Givens v. Chandler, La.App., 143 So. 79, 81, was a suit for the breach of a contract for the transmission of water to plaintiffs' adjacent property and it was shown that defendant broke the pipe and threw it over the fence into plaintiffs' lot without justification whatsoever. The court said:
"Here, there was a clear violation of the contract, in bad faith from a motive of `interest or ill will,' and the act complained of was certainly `tainted by fraud or malice,' which entitles plaintiffs to attorney's fees under Eatman v. New Orleans Pac. Ry. Co., 35 La.Ann. 1018, and C.C. art. 1934."
In Raney v. Gillen, La.App., 31 So.2d 495, 498, a purchaser wrongfully repudiated his agreement reserving certain fixtures to his vendor, who was forced to institute suit for reformation of the deed. The sum of $100 was allowed to the vendor, as a proper element of damages under LSA-C.C. arts. 1930 and 1934, for the services rendered by his attorney. The court had this to say:
"Under our interpretation of the codal articles referred to, supported by the authority cited, we think that attorney's fees in the instant case are a proper element of damages which should be assessed against the defendant who breached his contract with plaintiff, obviously influenced by motives of self interest."
We unhesitatingly find that Wagner & Wagner throughout the transaction acted in bad faith. We have already mentioned the incident of defendant having secured the $400 cash advance on the representation that plaintiff's clothing was "in work." Further, we know of no more personal contract than one entered into by a person with his tailor, yet it was brought out that defendant forwarded the materials to be used in making plaintiff's clothes to a firm of tailors in Chicago there to be cut and finished. See LSA-C.C. art. 2007. Defendant succeeded in concealing this fact from plaintiff until the trial.
Defendant was guilty of showing a complete lack of good faith and it seems there was a pattern of attempts to evade and conceal, of contradictions, inconsistencies, and of admissions grudgingly made from the witness stand.
We believe that under the facts of the case and the law plaintiff is entitled to a refund of the $400 plus the attorney's fee in the sum of $100 as an item of damages for breach of contract. The amount of the fee is equal to twenty-five per cent of the judgment which appears to us to be fair. We do not see fit to increase the amount.
The plaintiff also demands $150 for loss of time from his business, annoyance, inconvenience and aggravation, but he has not proven this item to our satisfaction and the claim is not to be allowed.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.