(No. 36410.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JAMES SYMONS, Appellant.

*Opinion filed September 22, 1961.*

PAUL R. GOLDMAN, and MAYER GOLDBERG, both of Chicago, (BURTON BERGER, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER, and MARVIN E. ASPEN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, James Symons, was indicted for the crime of forcible rape and waived a trial by jury. After a trial before a judge, he was found guilty and was sentenced to the penitentiary for a term of fifteen years. He has appealed directly to this court and although several grounds for reversal have been urged, it will be necessary to consider only the contention that the evidence fails to establish beyond a reasonable doubt that the act was against the will of the complaining witness.

The complaining witness, a 16-year-old high school student, frequently had been a baby sitter at the defendant's home. On the night in question the defendant and his wife went out and left the complaining witness with the defendant's three children, ages 9, 8 and 2. The two oldest children share a bedroom off the living room, while the young-

est slept in his parents' bedroom. The complaining witness went to sleep about 12:30 A.M. on the day bed in the living room. She was awakened at 1:00 A.M. by the return of the defendant's wife, who retired to her bedroom. The complaining witness went back to sleep, but was awakened again at about 4:30 A.M., this time by the defendant's return.

A sharp controversy exists as to what then transpired. The complaining witness testified that the defendant came over to her bed, lay down on top of her, rolled over to one side and, retaining hold of one of her arms, "managed" to get his trousers off with his free hand. He then tore her pajamas, pulled down her pants and had intercourse with her. She "shoved" him and screamed three of four times "get off me." The incident lasted about fifteen minutes, after which the defendant went to the dining room and the complaining witness went to the bathroom, where she discovered blood on her face. She washed off the blood and upon returning to the living room she saw the defendant's two oldest children who asked her what had happened. She made no reply and went back to sleep. When she awoke after 9:00 A.M. the defendant and his wife had already left for work. She had breakfast with her mother, who was apparently employed by the defendant as a domestic. She then spent the day with a girl friend and returned to her home at 6:30 that night. After a conversation with her mother, they went to the police station and a hospital.

The defendant was arrested at his home later that evening. William Horvatic, one of the arresting police officers, testified that when he and his partner, Charles Schroeder, identified themselves to the defendant, he said that he had been expecting them, that he knew that he had done something the night before; that he had been trying to contact his wife all afternoon, and that when he did reach her she told him that she had knowledge of what he

had done and had been so informed by the two children. Horvatic testified that the defendant was taken to the police station and questioned. He typed a statement directly as the defendant spoke and the defendant read and signed the statement then and again the following day. In the statement, the defendant admitted that he came home at about 4:00 A.M. and "The next thing I remember is that I was trying to get in bed with her and I was fighting with her. I remember that I committed the act."

The defendant, a 29-year-old railroad employee, testified and admitted that he had intercourse with the complaining witness, but denied that he used force or that she resisted. He testified that he had had one highball and six beers before returning home, but that he remembered what happened. He first went to the bedroom and checked the children. He then noticed that the complaining witness was awake and sat down on the side of her bed. He kissed her; she returned his kiss. He sat on the edge of the bed and removed his trousers and then he lay down on top of her, pushed her pants aside and had intercourse with her. He testified that upon his arrest the police officers asked him if he realized the age of the girl and he admitted that he did. He also testified that he had used the words "fooling around" and not the word "fighting" in the statement, that he glanced at the statement but did not read it and that he signed it after officer Schroeder told him not to worry, that they would help him as much as they could.

The defendant's wife testified that her bedroom door was open all night but that she did not hear anything. She admitted that she had two drinks earlier that evening. The doctor who examined the complaining witness testified that she had "a contusion and tenderness about the vagina" that could have been caused by sexual intercourse. She also had an inch to an inch and one-half diameter "abrasion" on her chin. The police microanalyst who examined her pajamas

testified that the waistband was partially torn away from the rest of the garment and that in the "crotch area" there was a "diffused blood stain in which there is semen."

The defendant contends that the evidence is not of the clear and convincing character required where a conviction rests upon the uncorroborated testimony of the complaining witness. (See *People* v. *Walden*, 19 Ill.2d 602, 608; *People* v. *O'Connor*, 412 Ill. 304, 308; *People* v. *Trobiani*, 412 Ill. 235, 240.) He urges that the failure of the complaining witness to resist or to make effective outcry, coupled with the facts that she went back to sleep and that she made no complaint to her mother when they were alone together at breakfast, are all inconsistent with the conduct of a young girl who has been forcibly raped.

The People, on the other hand, insist that the testimony of the complaining witness was corroborated by that of her mother, the arresting police officer, the examining physician and the police microanalyst. We cannot agree. The testimony of the doctor and that of the microanalyst tend to establish merely that an act of intercourse occurred and lend no more support to the complaining witness's testimony than to the defendant's. While the doctor found an abrasion on her chin, her mother testified that at breakfast she did not observe anything unusual about her daughter. The record does not suggest that the complaining witness mentioned the matter to her mother at that time. It is only prompt complaint which is competent to corroborate the testimony of the complaining witness. (See *People* v. *Scott*, 407 Ill. 301, 306; *People* v. *Catranis*, 392 Ill. 580, 583.) The oral statements made by the defendant after his arrest are as appropriate to a situation where a married man has had intercourse with a baby sitter in his own home as they are to forcible rape. It is only the written statement which casts serious doubt upon his testimony, and that was denied by the defendant.

We are of the opinion that the defendant was not

proved guilty beyond a reasonable doubt and it does not appear from the record that additional evidence would be available upon another trial. It is therefore unnecessary to consider the asserted erroneous rulings on the admission of evidence and undue curtailment of cross-examination of the witnesses for the prosecution.

The judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*