(No. 36831.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DONALD SZYBEKO, Plaintiff in Error.

*Opinion filed March 23, 1962.*

GEORGE M. CRANE, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and ROBERT E. CRONIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

After a bench trial in the criminal court of Cook County the defendant, Donald Szybeko, was convicted of the crime of forcible rape and sentenced to the penitentiary for a term of three years. He prosecutes this writ of error contending, among other things, that he was not proved guilty beyond a reasonable doubt.

The twenty-year-old prosecutrix testified that she spent the night of June 26, 1960, drinking in various Chicago taverns in the company of a young man and another couple. At the last tavern she met defendant, a prior and close acquaintance, and when the place closed at 3 :00 A.M. she and two other girls left the place in defendant's car. According to the prosecutrix, defendant drove the other girls to their homes but instead of driving her to a women's dormitory where she resided, parked his automobile and made advances which she resisted. She said that defendant started to slap her and, when she started to scream, drove the automobile first to an abandoned factory and then into an alley. Here, by her version, defendant repeatedly slapped her until she started bleeding from the mouth, and then had intercourse with her in the front seat of the car despite her struggles to prevent it. Following this she said defendant drove her to the dormitory, arriving about 5 :00 A.M., where she was admitted by a doorman and required to sign a register because of the lateness of the hour. She testified she was bleeding from the mouth, that her dress was stained with blood and that she still had the bloodstained dress in her possession. The dress was not introduced into evidence at the trial, nor was the doorman called as a witness to testify as to her condition.

The prosecutrix related that upon arriving in her room she told a hospital nurse, who resided in the dormitory, what had occurred and disregarded the latter's advice to call the police because she was afraid. However, the nurse did not appear as a witness to corroborate that im-

mediate complaint had been made. Six hours later, according to the complaining witness, she told a friend in the dormitory that defendant "had broken my jaw" and "exactly what happened." This friend, Joan Krusza, did appear as a witness for the prosecution and related that she had encountered the prosecutrix about noon on June 26, 1960, and noted the latter had a swollen jaw and was spitting blood. When she inquired what had happened, the prosecutrix replied that she had been raped the night before. The witness said she told the prosecutrix she should call the police and further stated that it was she who called the nurse. Two days later the prosecutrix was treated by a physician for a broken jaw.

On June 30, 1960, the complaining witness informed her mother of the occurrence and five days later they engaged an attorney. To use the words of the prosecutrix, the attorney was engaged for the purpose of collecting damages from defendant for the rape, and to refer the matter to criminal authorities if defendant did not settle. In this regard, defendant testified that the mother of the prosecutrix had telephoned him wanting to know who was going to pay her daughter's doctor bill and, on July 14, 1960, defendant received a letter from the attorney threatening criminal prosecution "unless you come into this office for the purpose of discussing this matter not later than July 18, 1960." It was about a month after the occurrence before it was reported to the police.

Defendant, testifying in his own behalf, stated he had known the prosecutrix for about eight or nine years, having lived in the same neighborhood and gone to the same school. He acknowledged having left the tavern at 3:00 A.M. with her and two other girls, and that he first drove the latter to their homes, but categorically denied the remainder of her testimony. Rather, according to his account, he had quite a few drinks that night and fell asleep and almost crashed into a viaduct as he was driving the prosecutrix

home. At this, he told her he was not going to drive all the way down town, suggested that she take a bus and gave her some money when she said she had none. He said he let her out of the car at a bus stop and, after driving a few feet, saw Mary Scannell, another schoolmate and acquaintance who lived in the neighborhood, out walking her dog. He stopped and after some conversation he suggested going to a restaurant for coffee. Miss Scannell took the dog into the house and the two drove to a restaurant called Angelo's only to find it closed. At that point, defendant testified, he became ill and vomited and fell asleep until awakened the next morning about 8 :oo A.M. by an acquaintance named Theodore Wantroba. This was corroborated by Wantroba, who said he noticed vomit both on the inside and the outside of defendant's car and related that when the car keys could not be found, he had gone to Mary Scannell's house at defendant's suggestion and obtained the keys from her.

The defendant's account was corroborated by Mary Scannell who testified that she had returned from a date about 3 :oo A.M., and that while she had her dog out for a walk she saw the prosecutrix get out of defendant's car and walk away. The witness said she talked with defendant for a time, then went with him to Angelo's restaurant and found it closed. While parked in front of the restaurant defendant, became sick, then fell asleep. She said she helped him as much as she could but left about 5 :oo A.M., taking the ignition keys with her, and agreed that she had delivered the keys to Wantroba at about 8 :oo A.M.

Richard Schmook, a mutual friend of defendant and prosecutrix, (who married the latter prior to trial,) appeared as a witness for the prosecution. It was his testimony that he had seen defendant asleep in the automobile about 7 :30 A.M. as it was parked near Angelo's restaurant, and that he noticed a red stain he thought was blood on the outside of the automobile. On cross-examination he conceded he had never told any one in authority about the blood

stain prior to trial. The People's only other witness, a Chicago police officer, testified that defendant had denied the crime at the time of arrest, and also that the accused had no prior criminal record. It was stipulated that if the attending physician were called he would testify there were no bruises on the prosecutrix's face at the time he treated her broken jaw.

While it is firmly established that the uncorroborated testimony of a prosecutrix may be sufficient to convict if clear and convincing, (*People* v. *DeFrates,* 395 Ill. 439, 445; *People* v. *Burns,* 364 Ill. 49, 54,) it is equally well settled that where her testimony is not of such clear and convincing character, and the defendant denies the charge, her testimony should be corroborated by other evidence, facts or circumstances in the case. (*People* v. *Silva,* 405 Ill. 158, 162; *People* v. *Glasser,* 335 Ill. 263, 269.) The People agree that this case falls within the rule of the latter decisions, but insist that the testimony of Joan Krusza, Richard Schmook, and the stipulated testimony that the prosecutrix was treated for a broken jaw is corroborative of the latter's testimony. For our part, we see little corroboration in the testimony of such witnesses, particularly when it is laid along side the many circumstances which weaken the prosecutrix's claim of outraged virtue.

Evidence that the prosecutrix made a complaint soon after the commission of the offense is indeed accepted for the purpose of corroborating her testimony, but to be admissible and to have corroborative value, the complaint must have been made voluntarily and not in response to questions and answers, and must have been a spontaneous outburst or expression of the prosecutrix's outraged feelings, rather than a mere recital of past events. (*People* v. *Cappalla,* 324 Ill. 11; *People* v. *Romano,* 306 Ill. 502.) The proof in this record does not show that the prosecutrix spontaneously or voluntarily complained to Joan Krusza that she had been raped, but only that she confided in Miss Krusza, seven

hours' after arriving home, when the latter noticed her swollen face and questioned her as to what had happened. We cannot say that such evidence falls within the exception to the hearsay rule which the law allows "upon the generous supposition that a woman thus wronged will be prompted to express her indignation at the injury inflicted upon her." *People* v. *DeFrates*, 395 Ill. 439, 444.

The failure to make timely complaint is one of the circumstances which weakens her testimony. She said nothing to the doorman at the dormitory, the first person she saw after leaving defendant, and there is conflict in her testimony as to whether she complained to the nurse. In one instance she stated she had told the nurse what happened immediately after arriving in her room, but it was her later testimony that she related the occurrence only to Joan Krusza. And according to the latter, it was she who brought the nurse to the prosecutrix the afternoon after the alleged attack. Further weakening the testimony of the complaining witness are the long delay in contacting the police, and the attempts to arrange a monetary settlement. *People* v. *Provenzano*, 305 Ill. 493.

Nor do we see satisfactory corroboration of rape in the medical testimony that the prosecutrix had a broken jaw, or in the testimony of her husband, revealed for the first time at the trial, that he saw what appeared to be a blood stain on defendant's car. There is no proof the prosecutrix suffered from a wound that would produce bleeding and the cross-examination of the husband renders his testimony highly improbable. On the other hand, the prosecutrix testified that she was bleeding from the mouth when she returned to the dormitory, that her dress was bloodstained and that she still had the bloodstained dress in her possession. Yet, the dress was not introduced as corroborative evidence, nor was the doorman at the dormitory produced as a witness. In short, we have only the uncorroborated

testimony of the prosecutrix which is neither clear nor convincing.

Moreover, in addition to defendant's denial of the charge and the weaknesses in the testimony of the prosecutrix, it cannot be overlooked that defendant's testimony was almost completely corroborated by Mary Scannell who, in turn, was partially corroborated by Wantroba. Considering the entire record, we cannot say that guilt has been established beyond a reasonable doubt.

The judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*