People of the State of Illinois, Plaintiff-Appellee, v. Argusta W. Appleby, Defendant-Appellant.

Gen. No. 51,959.

First District, Second Division.

December 30, 1968.

Erwin Grombacher, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James R. Truschke, Assistant State's Attorneys, of counsel), for appellee.

ON REHEARING

MR. JUSTICE LYONS delivered the opinion of the court.

The defendant, Argusta Appleby, was convicted in a bench trial for the offense of rape and sentenced by the court to a term of from not less than four (4) nor more than ten (10) years in the State Penitentiary. He appeals.

Among the theories advanced by defendant on review are contentions relating to: (1) the propriety of the circumstances surrounding his waiver of trial by jury; (2) incompetence of counsel in the trial court; and (3) the prejudice and predisposition of the trial judge against him. Suffice to say however, that having thoroughly reviewed the record, the court fails to find substance in any of these contentions which, in any event, would have no bearing upon a retrial of the issues. The court will accordingly limit its discussion to defendant's last theory on appeal, that the evidence presented was insufficient to establish his guilt of the crime charged beyond a reasonable doubt.

The complaining witness, Lillian Phillips, testified that the alleged incident occurred in the early morning hours of June 27, 1966, in the bedroom of her apartment located at 1028 East 46th Street, Chicago, Illinois. The prosecutrix had retired to bed at approximately 10:00 p. m.

the previous evening, leaving all the lights in her apartment on, including the bedroom. She slept in the same bed with four children (whose names and ages do not appear). Her husband was away at work. At approximately 5:45 a. m., a man appeared in the bedroom, with his pants removed, brandishing a knife. Upon being awakened, Mrs. Phillips observed that it was still dark outside and that the lights in her apartment had been turned off. She stated however that the lights (from 60-watt bulbs) in her bathroom and a closet "in the back" remained illuminated. The intruder advanced and held the knife to the victim's throat threatening to kill her if she attempted to scream for help.

The assailant thereupon forced the witness at knifepoint to engage in an act of sexual intercourse upon the bed. Mrs. Phillips stated that the man remained in the room for approximately fifteen minutes and upon exiting informed her that he resided upstairs in apartment 409, inquiring, ". . . was I coming up to see him. . . ." The victim testified that none of the four children in the bed had been awakened by the incident, explaining that she maintained silence, being in fear of her life. The witness testified that she thereafter immediately informed the building janitor of the assault and asked him to call the police. She stated that the police arrived to investigate, and acting on her information, discovered that there was no apartment 409 in the building. The witness added that she then promptly sought treatment at both Provident and Cook County Hospitals for injuries resulting from the attack.

Two days later, the prosecutrix stated that she had an occasion to observe defendant at close quarters, entering her apartment building. She testified that while she had an "idea" he was the man who had accosted her, she could not be positive about recognizing him because of a flat cap he was then wearing. Mrs. Phillips inquired and discovered that the man had taken the building

elevator to the fourth floor. She stated however that the next day she observed defendant across the street from her building (described as a distance of about 20 yards) and recognized him as the rapist, immediately summoning two policemen in the vicinity to make an arrest. Defendant was similarly pointed out by the prosecutrix in open court.

One of the arresting officers, Albert Smith, corroborated Mrs. Phillips' account of the streetside identification, stating that defendant, when accused, denied his implication in the crime. In response to inquiry, the officer stated that on June 27th he had had occasion to discover a complaint for rape made by the prosecutrix (presumably among the files at the Area 21 Police Headquarters to which he was assigned). The officer could otherwise add little to the State's case but to recall that at the subsequent preliminary hearing defendant had claimed to have been at work on the morning in question. Smith stated that a routine check with defendant's employer proved to the contrary. Testifying in his own behalf at trial, defendant explained in this regard that he had been mistaken as to the day of the week involved and had not worked that particular morning. Defendant admitted to having been a resident in the prosecutrix's building in apartment 442 at the time of, and for some six to eight weeks prior to, the date of the offense.

Defendant's defense purported to establish his presence on both June 26th and 27th at the home of his fiancee, Mabel Watson, at 6841 South Emerald Avenue. The alibi was introduced through the testimony of Miss Watson, one Helen Fenner and that of defendant himself, and was consistent in all but more detailed respects. It was submitted that defendant had, as he often did, stayed overnight in Miss Watson's apartment on the evening of June 26th where he remained until about noon the following day. Defendant had admittedly

211

fathered two of Miss Watson's children and frequented her home to assist her with household chores.

Each of the above witnesses testified that defendant had participated in a card game in Miss Watson's apartment which carried late into the evening preceding the crime. These respective accounts however differed considerably as to the specific number and identity of the other persons also joining in and leaving the game. Defendant testified that he had thereafter fallen asleep on the living room couch. As Miss Watson recalled, she and defendant had retired to bed together explaining that her couch was a sectional and too small to accommodate him. Helen Fenner similarly recalled having coffee with Miss Watson and defendant the following morning in the apartment, conceding however, on cross-examination, that she had discussed her testimony with Miss Watson on several occasions prior to the trial. This was the extent of the material portions of the evidence adduced below.

■■ A prosecution for rape is demanding of the utmost caution and circumspection by the courts, as the female's accusation, stemming from the clandestine circumstance of the offense is easily made, difficult to prove and ofttimes even more difficult to disprove. People v. Kepler, 76 Ill App2d 135, 221 NE2d 801 (1966). Consequently, a reviewing court considers itself especially charged with the duty to scrutinize the sum and substance of the evidence upon which a conviction for rape is predicated.

■■ As is often stated in criminal cases of this nature, it is incumbent upon the prosecution to prove beyond a reasonable doubt both the forcible or nonconsensual act of carnal knowledge as well as its perpetration by the accused. People v. Gardner, 35 Ill2d 564, 221 NE2d 232 (1966). Notwithstanding the fact that the case was tried before a court, sitting without a jury, which is in a superior position to observe the witnesses,

a court of review should not hesitate to upset the conviction where the evidence is either so unsatisfactory, improbable or open to uncertainty as to cast some reasonable doubt upon the guilt of the defendant. People v. Qualls, 21 Ill2d 252, 171 NE2d 612 (1961).

■ The State urges as dispositive of the issue the rule which states that the uncorroborated testimony of the complaining eyewitness alone, if clear and convincing, is sufficient to support a conviction on the charge of rape, We, however, on the basis of the record before us, do not think that the State can prevail by singularly relying on the testimony of the prosecutrix. Under the circumstances demonstrated by the instant case, where, as here, the testimony by the complaining witness alone is not of that affirmative character which the law requires, and the denial by the accused is buttressed by the testimony of persons in a position to know and relate the truth, then the victim's accusatorial account must be supported by or find substantiation in the facts and circumstances peculiar to the case. People v. Szybeko, 24 Ill2d 335, 181 NE2d 176 (1962) ; People v. Silva, 405 Ill 158, 89 NE2d 800 (1950).

■ The only link between defendant and the crime rests in an identification which would appear susceptible to error, and defendant's admitted residence in the building where the offense was committed. Under such circumstances, the trier of fact cannot lightly set aside the alibi testimony offered in the accused's behalf as unworthy of belief, albeit partially inconsistent in its more exacting respects. People v. Gardner, 35 Ill2d 564, 221 NE2d 232 (1966).

The question however is not one necessarily dependent upon the trial judge's determination of the credibility of the opposing witnesses. Conceding that determination for the moment to the State's advantage, the testimony of the victim must still be convincing to the court's satisfaction or otherwise be corroborated by the circumstances

attending the event. This is an element of fatal absence in the State's case here. Even though Mrs. Phillips' testimony remained free of self-contradiction, the account as portrayed by the prosecution leaves many questions unanswered and constrains a doubt as to defendant's guilt.

■ To the extent that the victim made explanation for her failure to cry out or manifest some outward attempt at resistance, we have no dispute. The prosecutrix was confronted by a male of, no doubt, superior strength who displayed and threatened to use a deadly weapon. In such a situation, the law does not require of the victim some resistance or counterforce where that act would either be futile or seriously endanger the female's life in view of the impending threat of harm. People v. Harrison, 25 Ill2d 407, 185 NE2d 244 (1962) ; People v. Sanders, 82 Ill App2d 159, 227 NE2d 79 (1967).

■ Nevertheless, numerous elements tending to ameliorate the probative force of the victim's assertions appear at various junctures in the State's version of the case. While the general lighting conditions in the apartment when the victim retired appeared adequate, she, at no point, gave indication of the quality of illumination in proximity to the scene of the attack. We know only that the lights in the bathroom and a closet, "in the back" had not been turned off by the assailant. No evidence was adduced to demonstrate the relationship these illuminated areas bore to the bedroom. The prosecutrix said only that it was light and that the defendant had remained in the room for a sustained period of time. Beyond this point, the court was left without some basis upon which to judge and determine the acuity with which she could observe the identity of the intruder. Compare People v. Hartnett, 49 Ill App2d 357, 199 NE2d 671 (1964), involving a similar factual setting.

While within the realm of possibility, the uncertainty with which we view the prosecutrix's testimony is extended by her story that none of the four children (in

214

a bed containing six persons) were awakened throughout this entire incident. Moreover, after his commission of the crime, defendant allegedly invited the victim to visit his residence, volunteering information in this regard certain to lead to his eventual arrest. Though the room number he gave proved erroneous, defendant, in fact, was then residing on the 4th floor of the building. We might be inclined to attribute this irreconcilable factor to an unwitting bravado.

 In a prosecution for rape, moreover, the female's prompt or spontaneous complaint of the incident evidencing her indignation is deemed strongly corroborative of the fact that the complainant was subjected to an act of sexual intercourse against her will. People v. Symons, 23 Ill2d 126, 177 NE2d 185 (1961). Save the victim's self-assertions, the record remains devoid of competent evidence to establish that a complaint was made. It appears only in this respect that Officer Smith, who was not immediately involved in the case, had observed a complaint for rape by Mrs. Phillips on June 27, 1966. Neither the janitor to whom the complaint was allegedly made, the investigating officers who presumably answered his call, nor the purported complaint and/or its author were ever produced by the State to verify this circumstance.

The aforementioned reasoning finds equal application in the prosecution's failure to call any medical witness who had occasion to consult with or treat the prosecutrix for anatomical injuries at either of the two hospitals she allegedly visited. While not necessarily a requisite to the State's case, this evidence may have sufficed to fill the voids left by the victim's testimony. See People v. Edmunds, 30 Ill2d 538, 198 NE2d 313 (1964); People v. Szybeko, 24 Ill2d 335, 181 NE2d 176 (1962).

Although a resident of some duration in the prosecutrix's building, defendant was an admitted stranger whom the victim had not theretofore observed in the area.

215

Yet, when Mrs. Phillips first saw the defendant two days later, while she had an "idea" he was the man, she did not positively recognize him, because of a flat cap he was then wearing. This confrontation was at close quarters under well-lighted conditions, and nowhere does the victim claim that the cap in any way shielded defendant's facial characteristics. During her second exposure to defendant in as many days, Mrs. Phillips was allegedly able to make a positive identification (absent the cap) from a distance of approximately 60 feet across a street. While the method of identification in the presence of Officer Smith would only tend to affect the credibility and weight to be afforded her testimony on the subject, People v. Woods, 26 Ill2d 582, 187 NE2d 692 (1963), we consider this circumstance significant to demonstrate a variance from what we would think to be a rape victim's more natural course of conduct. People v. Rainford, 58 Ill App 2d 312, 208 NE2d 314 (1965).

In retrospect, we cannot say that the State has produced sufficient evidence to maintain an abiding conviction of guilt beyond a reasonable doubt. Since the State has not made a showing that on a retrial they can introduce evidence not available in the first trial, the judgment is reversed.

Judgment reversed.

BURKE, P. J. and McNAMARA, J., concur.