THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* AUSTIN MOORE, JUNIOR, Defendant-Appellant.
(No. 55102;

First District—August 1, 1972.

James A. Stamos, of Chicago, (Serpico, Stamos & Hett, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James Sternik, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

A three-count indictment charged defendant with burglary (entering a home with intent to commit theft), burglary (entering the home with intent to commit rape) and rape. He waived trial by jury. The court

found him not guilty of the burglary charges but guilty of rape and sentenced him to serve four to eight years. In this appeal, in which he presents four issues, the one we decide is whether the State proved, beyond a reasonable doubt, that defendant committed the crime of rape. The record before us discloses the material facts.

### I.

At approximately 6:30 A.M. on June 24, 1969, Angela Jackowiak was at the front door of her home in Chicago when she noticed a man standing in front of 3342 West Iowa, the house across the street. The man "[h]ad a white t-shirt on, khaki pants and white gym shoes * * *." He was a Negro. That same morning, "at 5 minutes to 7:00", William LoSasso was on his way to work. At the corner of Homan Avenue and West Iowa. (a half-block west of the Jackowiak home) he "bumped" into a man he said "[w]as wearing a dirty t-shirt, dirty khaki pants and white dirty gym shoes." The man turned east onto Iowa (toward 3342 West Iowa). At approximately 7:00 A.M., the same morning, Rose LoSasso was standing on the second floor porch of her home at 862 North Christiana Avenue. From this point she could see the entire 3300 block of West Iowa, including Angela Jackowiak's house. Rose LoSasso saw a man open a gate and enter the rear yard of 3342 West Iowa. The man was dressed in "[a] white t-shirt, dirty, dark pants, dirty and white dirty gym shoes." At approximately 7:45 to 7:50 A.M., Angela Jackowiak's doorbell rang. When she opened the door, it was the prosecutrix. The woman was hysterical. She told Angela Jackowiak that she had been raped.

At defendant's trial, the prosecutrix gave this testimony:

She lived at 3342 West Iowa with her husband and their five children: a 10 year old boy, a set of twins, 8 years old, a 5 year old boy and another boy, then three months old. On July 24, 1969, her husband left for work, as he usually did, between 6:00 and 6:30 A.M. The doors and windows of her home were always locked. At about 7:15 A.M. she was awakened by a strange man who had a knife in his hand. He threatened her and the 5-year old boy. The twins came to the door of the bedroom. After she was allowed to take the twins to their room, the man forced her to have intercourse with him. The man left by the back door, taking with him the knife from her kitchen, a jacket belonging to her husband, one leg of a panty hose and $62.00 he had taken from her purse. The man who had intercourse with her had on a "regular t-shirt * * * brownish khaki pants * * * [and] a pair of soiled white gym shoes."

Soon after prosecutrix made her complaint to Angela Jackowiak, a neighbor and her son, James Kraus, were called. Kraus ran out of his home. As he did, Angela Jackowiak "[g]ave a quick description of the man. The man had a white t-shirt, dirty pants and gym shoes." Kraus

looked toward the intersection of Homan and West Iowa, less than half of a block away, and "saw a man of this description." Kraus got into his car and as he did two police officers turned into the street. The officers arrested the man a short distance away. The man was the defendant. He was wearing "[a] t-shirt and a very brown pair of pants and dirty gym shoes." Defendant was searched. He had on his person "some small change." He was returned to the Jackowiak house where he was identified by Angela Jackowiak and Rose LoSasso as the man they saw earlier in the morning and by the prosecutrix as the man who raped her. The officers asked defendant to remove the shorts he was wearing. He took them off and they were turned over to an evidence technician. Later, one of the arresting officers found the leg of the panty hose in the backyard of 3342 West Iowa and the jacket in an alley behind 3348 West Iowa. Neither the knife nor the money which the prosecutrix said was taken from her home was ever found.

Defendant gave this testimony:

He spent the night of July 23, 1969, at 3417 West Jackson in an apartment of an acquaintance, Alvin Prince. With him was his fiancee, Novella Willis. During the night he and Novella had sexual intercourse. In the morning, July 24, at about ten minutes to seven, he arose and drank some coffee. Then, he prepared to go to his place of employment, the Midwest Fence Company, at 815 North Kedzie.[1] He walked from 3417 West Jackson to Homan and took a bus going north. He got off the bus at Homan and Chicago. Before going to work, he decided to get some coffee. He could do this by walking past the intersection of Homan and West Iowa. As he was crossing West Iowa, one car pulled in front of him and one behind him. Policemen got out of the car and ordered him to halt. They arrested and searched him. He was told it was for rape. Defendant denied ever having seen the prosecutrix before he was taken by the police to the Jackowiak home.

In addition, defendant called Yvonne Prince and Novella Willis. They corroborated his testimony concerning where he had slept the night before he was arrested, what he did when he awoke and the fact that he was employed at 815 North Kedzie Avenue.

After hearing the witnesses and receiving in evidence four prosecution exhibits, the trial judge found that on July 24, 1969, defendant raped the prosecutrix. He then conducted a hearing in aggravation and mitigation. This disclosed that defendant was twenty-two years old, was gain-

---

[1] In the City of Chicago, Homan Avenue runs north and south at 3400 West. Kedzie runs north and south at 3200 West or approximately two blocks east of Homan. Chicago Avenue runs east and west at 800 North. Iowa runs east and west at 900 North.

fully employed and, before this occasion, had never been charged with a crime. Without contradiction or challenge by the prosecuting attorney, defendant's counsel described him to the trial judge as a young man with "an unblemished record  *  *  *  an exemplary citizen."

Now, we resolve the contentions and arguments of the parties and decide whether the evidence in this record proved defendant guilty beyond a reasonable doubt.

## II.

■■ We begin with the principle that as a reviewing court we are charged with the duty to examine the evidence in rape cases with great care. (*People v. Qualls*, 21 Ill.2d 252, 257, 171 N.E.2d 612; *People v. Hubbard*, 38 Ill.2d 104, 230 N.E.2d 220.) This charge flows from the nature of rape prosecutions, a nature that places on a reviewing court "[t]he duty to scrutinize the sum and substance of the evidence upon which a conviction for rape is predicated." (*People v. Appleby*, 104 Ill.App.2d 207, 212, 244 N.E.2d 395.) In *People v. Brown*, 99 Ill.App.2d 281, 241 N.E.2d 653, we emphasized the function of this scrutiny when we said that "[b]ecause of the nature of the crime, reviewing courts are charged with an extraordinarily high standard of care in examining the evidence in a rape case." It is in the exercise of this standard of care that we examine the facts of this case as shown by the evidence.

1. The prosecutrix lived with her husband and five children. One child was ten years old, two were eight years old. Neither the father (concerning when he left home, whether he left the doors open, and so forth) nor the children (whether they saw defendant in their home, and so forth) were called as witnesses.

2. The State's theory was that defendant, between 7:15 and 7:45 A.M. on July 24, 1969, entered the home of the prosecutrix, opened the doors to enter and leave, went into the kitchen and took a knife, cut a leg from a panty hose, rummaged through a purse on a dresser for money, took a jacket that belonged to the prosecutrix's husband, raped her and left. Although evidence technicians inspected the premises, examined items of evidence which included "dusting for fingerprints for examination," the record does not show whether fingerprints were found or whether identifying hair and other elements of proof were discovered which connected defendant with the crime.

3. According to the prosecutrix, defendant entered her home, raped her, left with a knife, the leg of a panty hose, her husband's jacket and $62.00 in cash. When defendant was arrested within view of her house, and within ten or fifteen minutes after her complaint, none of these items was found on his person.

4. The panty hose leg described by the prosecutrix was found in the

936

yard behind 3342 West Iowa. Her husband's jacket was found in an alley behind 3348 West Iowa. This location is a distance north and west of the prosecutrix's home. The record is not clear concerning the exact topography of the dead end street (West Iowa), the alley and the gangway that separate prosecutrix's home from the place where the jacket was found. However, the distance and direction, as shown by the evidence, are such that questions arise whether defendant could have been the man who left the prosecutrix's home, went north and west to the alley behind 3348 West Iowa, discarded the jacket and then walked south in time to be seen crossing Homan and West Iowa, as James Kraus testified.

5. Defendant's testimony, which was not contradicted, established that on July 24, 1969, he was employed at 815 North Kedzie, a distance two blocks east of the place where he was arrested. He testified that he was arrested while he was on his way (with one intended intermediate stop) to his place of employment.

6. Four prosecution witnesses, who at various times and places on the morning of July 24, 1969, claimed they saw defendant, identified him positively and with certainty.

7. The prosecutrix was positive and certain in her identification of defendant as the man who raped her in her home during the morning of July 24, 1969.

■■■ 8. Although on direct and on cross-examination they were asked questions which could have elicited the information, no witness for the State, including the prosecutrix, furnished any evidence concerning any physical feature of the defendant from which they could have identified him. The basis of defendant's identification by all of the State's witnesses, aside from Angela Jackowiak's statement that the man she saw was a Negro, was his dress: he had on a "white t-shirt", "khaki pants", "white gym shoes." [2]

9. The only evidence directly touching the question of rape is the prosecutrix's testimony, corroborated by her complaint to Angela Jackowiak. When Angela Jackowiak saw the prosecutrix, she was apparently

[2] Courts will take judicial notice of the variety, conventionality and utility in modes of dress. (See *Tolman v. Wieboldt Stores, Inc.*, 73 Ill.App.2d 320, 327, 219 N.E.2d 560; rev'd on other grounds, 38 Ill.2d 519, 233 N.E.2d 33; *Dynamic Imports, Inc. v. United States*, 294 F.Supp. 939, 943 (U.S. Cust. Ct. 1969); *Smallpage v. Wagner & Wagner*, 84 So.2d 863, 864 (La.App. 1956); *Blanchet v. Vermilion Parish School Board*, 220 So.2d 534, 538 (La.App. 1969).) Therefore, in examining the identification evidence in this case, we judicially notice that in the month of July, in a large city like Chicago, white t-shirt, khaki trousers and white gym shoes are a frequently used mode of masculine dress. It is common knowledge that a frequently used mode of dress can be seen on more than one person in the same general area.

normally clothed and physically showed nothing abnormal in her condition.

10. After defendant was arrested and taken to the Jackowiak house, he was asked by police officers to remove his shorts. He did this willingly and without objection. None of the police officers who examined the shorts found them wet or containing any moist substance, although a later crime-laboratory examination (when this was done the record does not disclose) revealed the presence of nonmotile spermatozoa.

11. From the time of his arrest, defendant denied the accusation that he raped the prosecutrix. No police officer testified to any incriminating statement by defendant.

■■ In *People v. Scott*, 407 Ill. 301, 304, 95 N.E.2d 315, the Supreme Court reminded us that "[i]t is the further duty of a reviewing court, where a verdict is returned by a jury in a criminal case or where a similar finding is made by a court where a jury has been waived, not only to carefully consider the evidence but to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and is not sufficient to create an abiding conviction that he is guilty of the crime charged." In this case, because of the facts we have catalogued from our examination of the record, we conclude that the evidence in this record is not sufficient to remove all reasonable doubt of the defendant's guilt nor does it create an abiding conviction that he is guilty of the crime charged. (See *People v. Faulisi*, 25 Ill.2d 457, 185 N.E.2d 211; *People v. Barfield*, 113 Ill.App.2d 390, 251 N.E.2d 923.) Therefore, it is our judgment that justice will be served by reversal of this conviction and a remandment of the cause for a new trial. (Compare *People v. Brown*, 99 Ill.App.2d 281, 302, 241 N.E.2d 653, and *People v. Appleby*, 104 Ill.App.2d 207, 216, 244 N.E.2d 395.) The judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

SCHWARTZ and LORENZ, JJ., concur.