THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MILTON JOHNSON, Defendant-Appellant.

(No. 71-48;

Third District—November 16, 1972.

Raymond A. Bolden, of Joliet, for appellant.

Louis R. Bertani, State's Attorney, of Joliet, for the People.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Defendant, Milton Johnson, was found guilty of rape, burglary and aggravated battery after a bench trial in the Circuit Court of Will County. He has appealed from all judgments and sentences.

At about 9 P.M. on February 15, 1970, Pennelope Williams, age eighteen, together with her companion Lee Chandler drove her Chevrolet to Pilcher Park located in Joliet, Illinois, and parked. A young man pulled his car in front of the complainant's car, got out of his car and while armed with a shotgun entered the rear seat of complainant's car, ordered the complainant to get into the back seat with him and ordered Chandler to lie on the floor in the front. Pennelope Williams was then beaten, forced to remove her clothes, raped, otherwise sexually assaulted, physically mistreated and beaten again. Chandler escaped sometime during the period and went for help. When he returned the Chevrolet was gone but a 1963 Buick was discovered nearby.

The complainant described the details of her ordeal indicating that after it was completed her assailant took her to another car but returned her to the Chevrolet. Her assailant then left for a few minutes, returned and drove complainant in her car out of the park. On the way they met a police car at which time the driver of complainant's car indicated that he was taking her to the hospital which he did. The police officers aiding Chandler were notified of the incident and they returned to Silver Cross Hospital in Joliet. According to Johnson, defendant, he was driving his stepfather's 1963 Buick in Pilcher Park when he saw a girl later identified as Pennelope Williams standing by her car moaning for help. He stopped his car, picked her up as she started to fall and put her in his car. He went a short distance, the car broke down and he then took complainant back to her car, drove out of the park, met the police officers and continued on to the hospital. Johnson was arrested at the hospital although he was not identified as her assailant by the complainant until some seven days later.

In seeking to reverse the judgment of the circuit court defendant argues the evidence is insufficient to justify the court's conclusion that he was guilty of the offenses charged, that he was denied a fair trial because the court permitted a dentist to be recalled for further testimony and finally that the sentences are improper.

■■ In reviewing the sufficiency of the evidence to support a conviction in a criminal case, the decision of the trier of fact will be affirmed unless we find a reasonable and well founded doubt as to the defendant's guilt. *People v. Richie*, 36 Ill.2d 392, 222 N.E.2d 479, and *People v. Cox*, 20 Ill.2d 458, 170 N.E.2d 531.

Defendant insists the testimony of the complainant is inconsistent, implausible and unworthy of belief. Also the defendant argues that the physical evidence is "inconclusive" and "equivocal" and fails to create or corroborate an abiding belief in defendant's guilt.

According to complainant's testimony she did not at any time while being brutally mistreated visually observe her assailant. (Chandler likewise claimed not to have seen the assailant and did not identify the defendant as the assailant.) She was told to keep her eyes shut and she did so. Her identification of defendant was from his voice. According to the complainant the man who drove her to the hospital was the same man who assaulted her and she based her assertion on her belief that the voices were the same. It is also true that the complainant did not make known her identification or the reasons therefor until some seven days after the event.

■■ As in *People v. Szybeko*, 24 Ill.2d 335, 181 N.E.2d 176, defendant asserts by way of analogy that the failure of the complainant to promptly indicate that the person who drove her to the hospital was the same person as her assailant makes her testimony on this issue incredible and not worthy of belief. Although the concept of fresh complaint or prompt outcry where rape is claimed is usually invoked to corroborate that an offense has occurred, the defendant urges the same principle ought to be applicable regarding prompt identification of the person alleged to have committed the offense. (*People v. Appleby*, 104 Ill.App.2d 209, 244 N.E.2d 395.) While we agree that the failure to promptly identify an assailant when the basis of the identification is or should have been known to the complainant may effect the probative value to be given such testimony, such failure may be explainable and in this case evidence was introduced tending to explain the delay.

■■ The physician who treated the complainant in the emergency room of Silver Cross Hospital about one hour after her admission, testified that complainant was semicomatose, had been beaten so severely that her eyes were closed and one side of her face was badly swollen. She was in

such great pain that the physician was unable to conduct a complete rectal and vaginal examination although these areas were swollen and distended. He also observed teeth marks on her breasts and burns on her chest and abdomen. The police officer who was at the hospital indicated the complainant was unable to respond to questions. The nurse who helped carry complainant into the emergency room testified complainant was semi-conscious. Under these circumstances the trier of fact could have concluded that complainant's mental shock and poor physical condition were sufficient to explain her failure to identify Johnson upon being admitted to the hospital. Nor do we believe that complainant's deliberate action of not looking at her assailant renders her testimony improbable. The fact that during the ordeal she may not have done that which may have aided in the identification of her assailant is not improbable in light of the brutality and force to which she was subjected.

As indicated earlier Johnson was arrested at the hospital and both he and Chandler were considered suspects. The Illinois Crime Lab was immediately summoned and voluminous examinations, inspections and tests were undertaken, described and presented as evidence. Such evidence included testimony regarding blood types, pubic hair comb outs, head hair analysis, scene photographs, identification of a heel print and also testimony linking the tooth marks on complainant's breasts as coming from defendant's teeth.

In arguing that the evidence is inconclusive defendant points to certain aspects of the evidence regarding blood types, secretions and hair comparisons. A lab technician testified that defendant's blood and secretions were type A, complainant's type O and Chandler's type AB. No analysis to determine sub groupings was made. In insisting that the testimony regarding blood and secretion types or hair sample comparisons does not corroborate complaint's testimony defendant refers to certain aspects of the testimony which it is true we believe are not consistent with other testimony. According to the technician, pubic hair comb outs of the defendant and complainant did not produce any hairs of the other person which would have been the expected result. Nor were any vaginal secretions found on defendant's shorts. Were these aspects of the evidence the only additional support for complainant's testimony we might be inclined to agree with defendant. However there is ample other evidence a part of which we will mention, that is inconsistent with defendant's version of the incident and consistent with that of complainant.

Type O blood stain were found on defendant's undershorts. No blood stains were found on defendant's outer pants near the fly area justifying the inference that the stain on the undershorts was made at a time when defendant's pants were down and is consistent with the account related

by complainant. Seminal stains from a type A secreter were also discovered on the back seat with pubic hair similar to that of the defendant and complainant found on the floor in the rear on the right side. Also a head hair similar to that of complainant was found on defendant's shorts and a pubic hair similar to that of complainant's found on his sock. There were no blood stain or secretions of the type AB (Chandler's type) or hair samples found in any place from which it might be inferred that Chandler was the assailant it appearing that this was a possibility considered by the investigators and urged by the defendant.

Among the other aspects of the physical evidence tending to establish the guilt of the defendant we shall mention the following. First of all near the scene of the offense a shotgun was discovered leaning against a tree in an area where complainant's clothes were strewn. The shotgun belonged to defendant's stepfather and had been in the trunk of the Buick driven by defendant. Second, near the spot where the shotgun was found there was a heel print which when compared with the boot defendant was wearing on the night elicited an opinion that the heel print was made by defendant's boot. Finally an oral pathologist in comparing a cast of defendant's teeth with a photograph of the teeth marks on complainant's breasts expressed the opinion that it was highly probable the teeth marks on the breasts were made by Johnson's teeth.

■■ We conclude the conviction does not rest solely on the complainant's testimony and her less than conclusive identification of defendant but is in fact supported by ample other independent physical evidence.

Defendant's next assignment of error relates to the recall by the State of its witness Dr. Paul Green. This witness is a dentist practicing in Joliet who made a cast of defendant's teeth after the defendant had been brought to the dentist's office for that purpose. (A cast was also made of Chandler's teeth.) The cast or mold was delivered to the deputy sheriff sometime later, was identified as an exhibit and was the basis of an oral pathologist's examination, comparison with photographs and opinion concerning similarity between the teeth marks and the photograph and those of defendant. In his initial testimony Green neglected to identify Johnson as the person from whose teeth he had made the cast. The next day during the State's case-in-chief Green was recalled and asked a single question relating the cast to Johnson.

■■ We are unable to find any error in this procedure let alone any prejudice to defendant. No question was raised concerning the integrity of the exhibit, no new facts were injected into the trial and there was in fact no dispute concerning the identity of the exhibit. Accordingly we find no merit in defendant's assignment of error. Defendant's final assignment of error relates to the sentences imposed. First defendant argues

the conviction and sentence for aggravated battery should be vacated because it arises from the same act or conduct which is the basis of his conviction and sentence for rape, the more serious offense. Second defendant argues the punishment is excessive.

The question presented is that raised in *People v. Johnson,* 44 Ill.2d 463, 256 N.E.2d 343, and *People v. Whittington,* 46 Ill.2d 405, 265 N.E.2d 679, which decisions employ somewhat different reasoning and reach contrasting results. However *People v. Rossi,* 52 Ill.2d 13, 284 N.E.2d 275, is a recent illustration of the application of the principle and in our judgment amply supports the action of the trial court in imposing separate sentences.

■■ After the rape and other sexual assaults had been completed complainant testified she was burned on the chest and abdomen first with a cigarette lighter and then a cigarette. She was also beaten further around the face and according to complainant she heard or felt a bone click. It was later ascertained that her jaw was broken and it may be inferred that the fracture took place at this time. Thus the violence and force which were the basis of the aggravated battery charge took place after the rape had been completed and was not the force and violence deemed an element of the rape offense. Under these circumstances the additional conviction and sentence for aggravated battery is justified.

■■ With respect to the contention that the sentence of from 25 to 35 years in the penitentiary on the charge of rape is excessive we find no reasons for disturbing the sentence in view of the nature of the offense and surrounding circumstances.

Finding no error in the judgment of the Circuit Court of Will County the judgment of the court is affirmed.

Judgment affirmed.

ALLOY and DIXON, JJ., concur.