THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HERBERT DAILEY, Defendant-Appellant.

First District (3rd Division)   No. 1—88—0351

Opinion filed April 4, 1990.

RIZZI, J., dissenting.

Randolph N. Stone, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Paula Carstensen, and Thomas O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Defendant Herbert Dailey was convicted of child pornography in a bench trial, receiving an eight-year prison term for that offense. On appeal he contends: (1) his guilt was not established beyond a reasonable doubt; (2) the information charging him with child pornography was so defective as to require reversal; and (3) his sentence was excessive.

We reverse, finding the evidence insufficient to establish defendant's guilt.

The State presented two witnesses at trial: Shari T., who was the alleged victim of this offense, and Officer James Moore, to whom Shari reported the offense, two years after its occurrence. Shari was 16 years old at the time of trial. She testified that in the spring of 1985, she began baby-sitting for the defendant and his wife at their home in Robbins. She did this while defendant's wife worked, which was about three times a week, and she continued to do so for 1½ years. She had been baby-sitting for them for "a couple of months" when, on a day in March or April of that year (she could not remember the exact date), the alleged events occurred.

Shari testified that the incident began when defendant touched her on her legs. (Shari admitted at trial that she had never previously told anyone that defendant touched her that day.) When she moved to the other side of the room, he came over there. She then went outside to get the baby, who was at the neighbor's house, but defendant said to

leave the baby over there. When he asked if she wanted to take some pictures, she said yes and suggested they take them outside. He told her he meant nude pictures, and she told him she did not want to do this. He then said if she did not comply he would hurt her or do something to her. She became frightened and went upstairs to his bedroom.

According to Shari, defendant joined her in the bedroom. As she sat on the bed he asked her to take her clothes off. She first refused, but when he threatened her with a gun, she disrobed. Shari testified that she lay on the bed for several minutes while defendant watched her. While holding the gun, he told her to smile and she complied. He then took a Polaroid camera from a drawer and began photographing her, telling her how to pose as he did so. While she was sitting in a chair he grabbed her leg and placed it on the end of the chair. Shari testified that defendant took 11 photographs of her that day. However, when asked where they were taken she responded: "One was in the chair, and one was on the bed, and one was downstairs."

Although Shari had placed these events in March or April, she also said that the downstairs photograph was taken by a Christmas tree in the living room. When they went downstairs, she did not see the gun, which defendant had put down when he began taking the photographs. At the time of the incident defendant walked with a severe limp. However, she never tried to run from him or escape from the house. When defendant had finished taking the pictures, she asked what he would do with them but he did not respond. She then got dressed and went home.

Shari's mother and sister were home when she arrived, but she did not tell them what had happened. Shari testified that she ran crying into the house and was asked by her mother what had happened but she did not respond. At trial she explained that she thought her mother would think she had done this on her own.

Several days later Shari was again baby-sitting for defendant when he showed her the photographs for the first time. When she asked what he would do with them, he said he would bury them in the ground. At an unspecified later date, she saw two photographs in the possession of two of his friends, Bernard Campbell and Gary McGee. For two years she did not tell the police what had occurred. Then in April 1987,[1] while at McGee's house, she found one of the photographs

---

[1]Shari first insisted, when questioned by the prosecutor and the court, that this occurred in 1986. Finally, when the prosecutor asked her whether it could have been in April of "this year" (1987), she responded "Yes. Of this year. I'm falling off. Yes. This year."

under a couch after being told of its location by McGee's niece. She kept the photograph for several days and then gave it to Nathaniel Rollins, who accompanied her to the police station and gave it to Officer James Moore. She identified a prosecution exhibit as the photograph she had found.

Shari admitted that prior to trial, in July, she had told defense counsel that she would testify to a "story," that two boys who raped her took the pictures. Her explanation for this, under examination by the prosecutor, was as follows:

"Because they told me—because, really because, my brother—when I first got ready to come up here to see him, he was screaming, and hollering, and stuff. And they had me confused. And he said, he don't want me to see him like that.

Q. Who told you that?

A. His lawyer.

Q. Told you he didn't want to see who like that?

A. He didn't want to see [defendant] like that.

So I told him that I was going to make up a story, and say that the two boys that supposedly raped me, a long time ago did it."

Shari testified that it actually was defendant who had taken the photographs. She also testified that the two boys who previously raped her were not prosecuted, because when her mother reported the crime to the police they could not find the two boys.

Shari stated that she had told defendant she was going to tell his wife about taking the pictures, but he indicated he did not care. Indeed, he told her he was going to show one picture to the chief of police. However, she also testified that he told her if she told anybody, or went to the police, he would do something to her.

The only other prosecution witness was James Moore, who was an investigator with the Robbins police department as well as a counselor for the Berman Youth Committee. He testified that Shari and Nathaniel Rollins brought him the photograph on April 27, 1987. He had known Shari for three years because she and her family were in counseling with him. Shari told him "this guy" told her to take some pictures. She had waited over two years to report this because the man threatened to hurt her if she said anything. She also told Officer Moore she had obtained the photograph from Gary McGee's house, but Moore, who said he investigated the crime, could not recall if he talked to McGee during the investigation. He never recovered a weapon or the camera, nor did he find any other photographs. Moore was aware that there had been an altercation between defendant and

Nathaniel Rollins, but he did not know when this had occurred.

The trial court found Shari to be very credible "despite some small collateral impeachment" which the court said was unimportant. The court convicted defendant of child pornography, but acquitted him on a charge of armed violence because the evidence indicated he had placed the gun on the dresser before taking the photographs. Following a sentencing hearing, defendant was sentenced to eight years in prison.

## I

Defendant argues that the evidence presented against him was insufficient to establish his guilt beyond a reasonable doubt. Specifically, he contends that the photograph introduced into evidence was not child pornography as defined by statute and that in any event the testimony of the State's complaining witness was so lacking in credibility as to require reversal. We find that both grounds, independently, require reversal.

■■ Defendant was charged with having taken a photograph of Shari, whom he reasonably should have known to be under 18, in a pose involving a lewd exhibition of her genitals. The statute in question provides in pertinent part:

"(a) A person commits the offense of child pornography who:

(1) *** photographs *** any child whom he knows or reasonably should know to be under the age of 18 where such child is:

\* \* \*

(vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the genitals of the child or other person." (Ill. Rev. Stat. 1987, ch. 38, par. 11—20.1(a)(1)(vii).)

By its plain terms, the statute requires that for a photograph to be considered child pornography under subsection (vii), the child's genitals must be exhibited in the photograph. Webster's Third New International Dictionary defines "genitals" or "genitalia" as "the organs of the reproductive system; [especially] the external genital organs." (Webster's Third New International Dictionary 946 (1986).) The photograph at issue here contains no such exhibition. It depicts a nude, sexually mature girl, lying on her side on a bed, smiling at the camera, with her legs slightly apart. Her breasts and pubic hair are clearly visible but her genitals cannot be seen.

In its brief the State focuses on whether the photograph is lewd. But if no genitals are visible in the photograph, its lewdness becomes irrelevant. Thus, the State relies to a great extent on *People v. Hebel*

(1988), 174 Ill. App. 3d 1, 527 N.E.2d 1367. But in *Hebel,* the court was concerned with a group of photographs which indisputably included views of a young girl's genitals. These photographs had been seized from the defendant and provided the basis for a search warrant. In determining whether the photographs had provided probable cause to believe defendant was engaged in child pornography, the court noted that genitalia were visible in a number of the photographs, and then discussed at length whether the photographs were lewd.

The State also apparently suggests that *Hebel* supports a broader definition of what constitutes a lewd exhibition of genitals. The State notes that the *Hebel* court looked for guidance to Federal cases construing a Federal statute on child pornography. In particular, *Hebel* cited to standards for determining lewdness approved in *United States v. Rubio* (5th Cir. 1987), 834 F.2d 442, 448, which included "whether the focal point of the visual depiction is of the child's genitalia or pubic area." But the *Rubio* court was construing a Federal statute which was concerned, in pertinent part, with "lascivious exhibition of the genitals *or pubic area*" of any person. (Emphasis added.) (18 U.S.C. §2255 (1987).) For this reason the State cannot rely on *Hebel* for the proposition that a photograph depicting pubic hair but not the genitals would suffice under the Illinois statute. In this regard it is noteworthy that the previous Illinois child pornography statute proscribed, *inter alia,* exhibition of the "genitals or pubic area." (Ill. Rev. Stat. 1981, ch. 38, par. 11—20a(a)(2)(f), repealed 1984.) The omission of the latter part of this language from the new statute creates a presumption that the legislature intended to narrow the reach of this statute. (*Lingwall v. Hoener* (1985), 108 Ill. 2d 206, 212, 483 N.E.2d 512, 515; *Board of Trustees of Community College District No. 508 v. Human Rights Comm'n* (1981), 88 Ill. 2d 22, 31, 429 N.E.2d 1207, 1212.) For all these reasons, we find that the photograph allegedly taken by the defendant was not child pornography as defined by the statute, and therefore, defendant's conviction must be reversed.

We also find, as an independent ground for reversal, that the State's evidence was insufficient to establish beyond a reasonable doubt that defendant took the photograph at issue.

In this cause the complainant testified that the defendant forced her at gunpoint to disrobe and then took a series of nude photographs of her. However, two days after this allegedly occurred she again was at his home baby-sitting for him, and she apparently continued to do so for months thereafter. She failed to report this crime to the authorities for over two years. Although she testified that defendant threat-

ened to do something to her if she went to the police or told anybody, she also testified that he said he himself would show one picture to the chief of police and he did not care if she told his wife about the photographs. When she did come forward, it was with a man who had had an altercation with the defendant. The complainant testified that the photographs were taken some time in March or April, but insisted that a Christmas tree was still up in the home where they were taken.

The complainant only produced one photograph, although 11 had allegedly been taken. That photograph, according to her testimony, was not found at defendant's home but at that of a third person, Gary McGee. McGee was never interviewed by the officer investigating this crime. Although the photograph clearly shows some of the contents of a bedroom, no testimony was introduced establishing that the bedroom was in fact that of the defendant.

The complainant admitted that before trial she had expressed the intent to take the stand and testify that two boys, who had previously raped her, had taken the photographs. She also claimed that this would be a lie, but her explanation for that planned testimony, which we have set out above, is incomprehensible.

■■ ■ Although the credibility determination of the trial court, as the trier of fact, is accorded a great deal of deference upon review, that deference does not remove this court's obligation to review the trial testimony and to reverse where that testimony is so incredible and so unsatisfactory as to raise a reasonable doubt as to the defendant's guilt. (*People v. Morgan* (1977), 69 Ill. 2d 200, 206-07, 370 N.E.2d 1063, 1066; *People v. Appleby* (1968), 104 Ill. App. 2d 207, 212-13, 244 N.E.2d 395, 398.) Our obligation as a reviewing court cannot be met by turning a blind eye to the insufficiency of the State's evidence. In this cause the State relied entirely upon the testimony of the complainant to establish defendant's guilt. That testimony, as outlined above, was incredible and unsatisfactory. For these reasons we must reverse defendant's conviction.

The judgment of the trial court is reversed.

Reversed.

CERDA, P.J., concurs.

JUSTICE RIZZI, dissenting:
I dissent. I would affirm the child pornography conviction and sentence.

Pornography poses a threat to the child victim equal to if not grater than sexual abuse and prostitution and constitutes a threat to the public health, safety and general welfare. (*People v. Walcher* (1987), 162 Ill. App. 3d 455, 458-59, 515 N.E.2d 319, 321-22.) A reviewing court may not substitute its judgment for that of the trier of fact, and a conviction may not be reversed unless the evidence is so improbable as to create a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320.) The evidence here is not so improbable.

In summary, the minor testified that the defendant took numerous nude photographs of her while she was at his home baby-sitting. The trial court found the minor victim to have been a *"very credible"* witness despite "some small collateral impeachment" which he characterized as unimportant. (Emphasis added.) The court found that the defendant took the photograph and threatened her with bodily harm. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Phillips* (1989), 127 Ill. 2d 499, 510, 538 N.E.2d 461, 472-73.

The photograph consisted of the victim's completely naked body, including her breasts and genital area. S.T. is in an obviously posed, intentionally seductive position. The focus of the photograph is the genital area. Examination of the photograph refutes any suggestion that mere nudity is depicted. The photograph was obviously intended to excite sexual desire. S.T.'s genitals are exhibited or displayed, albeit in an obscured manner. This is the type of photograph that the statute prohibits. (*Walcher,* 162 Ill. App. 3d at 461.) The fact that photographs in other cases may be more offensive or focus somewhat more clearly or closely on the genitals does not require reversal of the defendant's conviction. (*Walcher,* 162 Ill. App. 3d at 462.) Any other interpretation elevates form over substance at the expense of the victims that the legislation should be protecting.