(No. 42484.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES R. MOORE, Appellant.

*Opinion filed January 28, 1972.*

VICTOR G. SAVIKAS and FREDERICK F. COHN, of Chicago, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, General, and ROBERT A. NOVELLE and ROBERT L. BEST, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, James R. Moore, was found guilty by a jury in the circuit court of Cook County of the offenses of rape, deviate sexual assault, burglary and robbery, and sentenced to concurrent sentences of not less than 30 nor more than 50 years on each of the rape, burglary and robbery convictions, and not less than 5 nor more than 10 years on the conviction for deviate sexual assault.

The complaining witness testified that on December 14, 1967, at approximately noon, she was awakened from a nap by noise in her apartment. As she opened her eyes, she saw a man standing in her room. She screamed, and the man leaped upon her and began choking her. He turned her over on her stomach, removed part of her clothing and covered his face with a bandanna. He forced her to perform an act of oral copulation, and then raped her. He left the apartment taking with him several items of personal property including two musical instruments.

As grounds for reversal defendant contends first that he was denied equal protection of the law when the trial court denied his request for a transcript of the preliminary hearing at which the complainant testified. The record shows that at a motion hearing approximately two months prior to trial defense counsel requested a copy of the transcript of the preliminary hearing. The trial court stated that he was not entitled to the transcript but that the "preliminary hearing statements" would be preserved and would be available "for you and for your use at the time of trial." At the trial, following the testimony of the complaining witness, defense counsel again requested the transcript. It was determined that the testimony had not been transcribed and the court ordered counsel to proceed without it.

Citing *Roberts v. LaValle, 389 U.S. 40, 19 L.Ed.2d 41, 88 S.Ct. 194,* defendant argues that the refusal of the transcript violated his constitutional rights for the reason that if he were not indigent he could have ordered the testimony transcribed. The People contend that *Roberts* is

not applicable for the reason that the New York statute involved in *Roberts* specifically provides for furnishing the transcript upon payment of the statutory fee and there is no comparable statute in Illinois. Defendant argues, and we agree, that the distinction for which the People contend is not valid for the reason that under the provisions of section 5 of the Court Reporters Act (Ill.Rev.Stat. 1969, ch. 37, par. 655) a defendant able to pay the fee would have been able to obtain the transcript. We hold that under the authority of *Roberts,* the cases therein cited, and *Mayer v. City of Chicago,    U.S.   , L.Ed.2d 372, 92 S.Ct. 410,* the denial of the transcript deprived defendant of equal protection of the laws.

When the testimony adduced at the preliminary hearing was transcribed is not shown, but the transcript is included in the record on appeal. Citing *Chapman v. California, 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824,* defendant argues, correctly, that for error of constitutional dimensions to be deemed harmless the reviewing court must be able to declare a belief that it was harmless beyond a reasonable doubt. We have examined the testimony at the trial, the testimony at the hearing on defendant's motion to supress the identification of the defendant by the complaining witness, and the transcript of the preliminary hearing, and fail to find any testimony for which the transcript could have been used for purposes of impeachment. Defendant argues that in the hearing to suppress, and at trial, the complaining witness testified the assault occurred shortly after noon and that at the preliminary hearing she testified "it was night." Taken out of context that statement might appear to support defendant's contention that there is a discrepancy in her testimony, but read with her other testimony at the preliminary hearing it is obvious she meant her room was darkened because the windows were covered. We conclude that the denial of the transcript was harmless beyond a reasonable doubt.

Defendant contends next that the trial court committed reversible error in refusing to call the complainant as the court's witness in the hearing on the motion to suppress the identification. He argues, without pointing out any specific instance, that the ruling deprived him of the opportunity to impeach her with her prior statements. The one specific reference in the argument is to a police report which obviously could not be used to impeach the complainant. Under the circumstances shown in the record we cannot say that in denying the request the court abused its discretion.

Defendant contends next that the trial court erred in unduly limiting his cross-examination of a police officer witness at the hearing to suppress. The record shows that although the court sustained the People's objection to a question, the information was elicited in response to another question propounded very shortly thereafter. Defendant has not demonstrated, nor do we perceive, in what manner the ruling complained of was prejudicial.

The defendant complains of the trial court's refusal to order the court reporter, during cross-examination of the complainant at the trial, to read back parts of her testimony on direct examination. He argues that the prior answers were proper impeachment, and the court's ruling was error. Defendant has confused allegedly contradictory testimony at the trial with inconsistent prior statements, which, not having been heard by the trier of fact, may be shown for purposes of impeachment. We find no authority to support defendant's contention, and the trial court did not err in its ruling. The record also shows that although he did not consider it necessary to do so, the trial court, at the close of the People's case, recalled the complainant and permitted defendant to interrogate her and show that there was a discrepancy in her testimony regarding the selection of the photographs from which the identification was made. Assuming, *arguendo,* that the ruling of which defendant complains was error (and we hold it was not),

under the circumstances shown it was rendered harmless.

Defendant contends that he was deprived of his sixth amendment right to confront the witness. This argument is based on the alleged refusal of the People to furnish defendant with the complainant's correct address. He argues that failure to furnish him with her address in California where she testified she was living at the time of trial deprived him of his right "to investigate her very transient existence during this time in order to investigate her reputation and any other strange activities which might be admissible for the purpose of affecting her credibility." The record shows that defendant was given the only two addresses at which she lived in Chicago and that the court took great pains to assure her availability for interview by defense counsel. She testified she had lived in California for only six days and except for the speculative suggestion that such information might have led to the discovery of information not elicited in the course of her lengthy and repetitive cross-examination, defendant has failed to show how he was in any manner prejudiced by the failure to know her California address. The contention is wholly without merit.

Defendant contends next that the identification of defendant is the product of a "suggestive photographic identification procedure and a suggestive corporeal identification procedure." In support of this contention defendant argues that the identification of the defendant by the complainant is based upon an improperly suggestive procedure employed in the course of the complainant's examination of photographs furnished by the police and in the manner of her viewing the defendant at the preliminary hearing.

The complainant testified that when she was awakened she had been sleeping for approximately 45 minutes, that the only light in her room came through a window which was covered by a quilt, that the only time she saw defendant's face was for a period of 10 or 15 seconds

before he covered it with a bandanna. At no subsequent time while he was in her apartment could she see his face. Upon his departure she called the police and when they arrived at her apartment she told them she had been raped. She described her assailant as a negro male, 20 to 25 years old, 185 lbs., six feet tall, dark complected and wearing a yellow sweater. She was taken to the emergency room at Billings Hospital and examined by a physician. After having been examined at the hospital, complainant described her assailant to other police officers as weighing over 200 lbs. with facial hair around his mouth and chin. At the time of the occurrence defendant was 6 ft. 2 inches tall, weighed 240 lbs. and had a beard.

Two days later, from over 200 photographs, complaint selected several that resembled her assailant. A few days later she tentatively identified the photograph of defendant from a group of about 10 photographs, but stated she could not be certain unless she saw him again. She was then requested by a police officer to sign a criminal complaint naming defendant. When defendant was brought into court for a preliminary hearing, complainant was also in the courtroom. After defendant's name had been called and he stepped forward before the bench, complainant identified him as her assailant.

The complainant also testified that on the evening preceding the day of the occurrence she saw defendant in Smedley's Restaurant, located near her apartment and that defendant had engaged her in conversation. Defendant argues correctly that none of the police reports contain any indication that complainant had told them she had seen defendant on the preceding evening but the complainant and one officer testified that she had given the police this information after she returned from her examination at the hospital.

The record does not support defendant's contention that the examination of the photographs was conducted in a manner to suggest the selection of any of the 200

individuals as her assailant and the fact that she was permitted to see the defendant at the preliminary hearing does not, under the circumstances shown, taint her identification. The record shows a sufficient basis for an identification wholly independent of the viewing of the photographs and her seeing the defendant in person at the preliminary hearing is shown to have merely confirmed her identification from the photograph.

Defendant contends next that the evidence is not sufficient to prove him guilty beyond a reasonable doubt. In addition to the testimony heretofore reviewed the record shows that after her assailant left the apartment complainant found on the floor of her bedroom a checkbook which was the property of a friend of defendant. Inside the checkbook was a letter which the owner testified she had written on December 12, 1967, but had not mailed. She testified further that on December 13, 1967, she had given the defendant the keys to her apartment and asked him to remove some personal property which he had left there. Defendant stipulated that he had removed the letter from the friend's apartment.

At the time of defendant's arrest the police searched his apartment. One of the officers testified that he had recovered the items stolen from complainant. On cross-examination, however, he testified he had no knowledge that complainant had ever identified them as hers, nor did complainant testify that she was ever asked to identify them.

Two witnesses called on behalf of defendant testified that they were students with defendant at Roosevelt University and were with defendant in the university cafeteria at noon on December 14, 1967, discussing a program planned for the school on the next day, which was the day classes let out for the Christmas vacation.

A friend of defendant and a waitress employed at Smedley's Restaurant both testified that on the night

defendant spoke with complainant at Smedley's they remembered defendant's searching on the floor of the restaurant for an object he had lost and which he described as a "kind of a book."

Defendant argues that the alibi testimony was unimpeached and the loss of the checkbook at Smedley's satisfactorily explains its presence in complainant's apartment. He argues further that the complainant did not have the opportunity to see her assailant in sufficient light or for a sufficient time to make a reliable identification and cites alleged discrepancies in her description and the failure of the police report to show any reference to her having seen him on the preceding evening. Upon review of the entire record we do not find the evidence so unsatisfactory as to raise a reasonable doubt of defendant's guilt, and absent such finding we will not disturb the verdict and judgment.

Defendant contends next that he was denied equal protection of law when he was denied the use of the police department's arrest records of prospective jurors. The record does not satisfactorily show that the State's Attorney was in possession of the information sought in defendant's motion but assuming, *arguendo,* that he was, it would have been no more available to an affluent defendant than to an indigent, and there is here no denial of equal protection.

Defendant contends next that improper argument and prejudicial conduct on the part of the State's Attorney denied him a fair trial. A detailed review of the contentions will be of no precedential value and it suffices to say that our examination of the record fails to persuade us that any of the conduct of which defendant now complains was so prejudicial as to require reversal.

Finally defendant contends that because all of the charges arose out of one transaction, involving one victim, it was improper to impose more than one sentence. Each of the offenses of rape, robbery and burglary, although

committed in the course of the same transaction, involves conduct clearly divisible from the conduct which constitutes the other offenses. With respect to the offenses of rape and deviate sexual assault, there is precedent for the imposition of separate sentences. *(People v. Scott, 43 Ill.2d 135, People v. DeFrates, 395 Ill. 439.)*

We find no reversible error and the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*