THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES WEAVER, Defendant-Appellant.

(No. 55077;

First District—May 5, 1972.

Gerald W. Getty, Public Defender, of Chicago, (John T. Moran, Jr. and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James R. Truschke, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

*OFFENSE CHARGED*

Attempt (robbery). Ill. Rev. Stat. 1967, ch. 38, par. 8—4. Attempt (murder). Ill. Rev. Stat. 1967, ch. 38, par. 8—4. Aggravated battery. Ill. Rev. Stat. 1967, ch. 38, par. 12—4.

*JUDGMENT*

The case was tried before a jury which found defendant not guilty of attempt (murder) and aggravated battery, but guilty of attempt (robbery). He was sentenced to a term of not less than 13 nor more than 14 years.

*CONTENTIONS RAISED ON APPEAL*

(1) Defendant was denied equal protection of the law by the refusal of the trial court to provide him a free preliminary hearing transcript.

(2) Final arguments by the State were prejudicial to defendant because the prosecutor pointed a shotgun at the jury and made statements of fact not based on the evidence.

(3) The sentence of not less than 13 nor more than 14 years is inconsistent with the policy of providing indeterminate sentences.

*EVIDENCE*

On October 6, 1968, approximately 11:25 P.M., defendant entered Farmer Brown's Chicken Shack, a food carry-out store at 1271 N. Clybourn owned by a Mr. and Mrs. Gandy. He was followed into the carry-out by another man. Three women were working in the shop at the time and there were two other customers inside who had just placed their orders. Defendant and the other man approached the counter and were told to take a number for their order. Defendant then went to the rear of the shop with the other man, who then returned to the counter, drew a pistol, and announced a holdup. Defendant was next seen pointing a sawed-off shotgun over the counter. The man with the pistol fired a shot which was followed by a second shot from defendant's shotgun. Mrs. Gandy ducked behind the counter but was struck in the hand by the blast from defendant's shotgun.

Virginia Cousin, an employee at the store, reached for a pistol which was kept behind the counter, and fired first at the man with the revolver and then shot three times at defendant. Defendant was struck in the neck by one of her shots and fell to the floor still holding his shotgun.

Mr. Gandy came into the store and wrestled the shotgun away from defendant. The other man fled and Miss Cousin called the police.

The arresting officer found defendant lying on the floor with a bullet wound in the neck. He recovered an unused shotgun shell from defendant's coat pocket and a spent shell from the chamber of the shotgun which had been taken from the defendant by Mr. Gandy.

Defendant contends that he went to the Chicken Shack to buy food; that he carried his shotgun under his coat pocket for protection because of "the commotion that was in the area"; that he did not draw his gun or fire any shells while he was there; that he had two shells in his pocket, but the gun was not loaded.

*OPINION*

■■ Defendant first contends that he was denied equal protection of the law when the trial court refused to provide him with a free transcript of the preliminary hearing.

On September 3, 1969, defendant, through his court-appointed counsel, filed a motion for the production of twelve different documents or groups of documents and materials. Included was a request for "[A] transcript of the proceedings at the preliminary hearing in this cause without expense to defendant." However, defendant by testimony, affidavit or otherwise, never established that a preliminary hearing had ever been held in this case. (Defendant, himself, could very simply have deposed to this fact if it had ever occurred.) The record contains no reference to there having been such a hearing, and, in consequence, no

indication that the transcript requested ever existed. Under these circumstances, we conclude that defendant's rights were not violated by the failure of the State to provide what was not shown to have been in its possession or control.*

Defendant next maintains that it was prejudicial error for the prosecutor to point a shotgun at the jury in his closing argument.

■■ At the trial, a State's witness testified as to defendant's use of the gun during the robbery. Although she did not actually hold the gun, she did aim an imaginary gun, and no objection was made to her demonstration. During closing arguments, the prosecutor accurately recreated the witness' demonstration. No objection was made when the prosecutor picked up the shotgun which had been admitted into evidence and demonstrated how defendant had held the gun during the robbery. The jury was not substantially prejudiced by this demonstration. *People v. Moore*, 35 Ill.2d 399, 200 N.E.2d 443, *cert.* denied 389 U.S. 861.

■■ Defendant also maintains that prejudicial error was committed when the State's closing argument misstated the facts of the case. Specifically, defendant contends that absolutely no evidence was adduced at trial which showed that a shotgun blast had injured Mrs. Gandy. Yet, from the testimony of one witness, defendant pointed his shotgun toward the back of the store where Mrs. Gandy had tried to hide. The witness heard one shot fired, then eventually left her own hiding place and went to the back of the store where she saw the wounded Mrs. Gandy.

Another witness, Miss Cousin, testified that first she saw the other man fire a pistol and after she fired her revolver at both men, defendant fired his shotgun.

Mrs. Gandy testified that she saw the defendant with a shotgun, that she heard two separate and distinct shots, and that she was not hit by the first one.

Considering the testimony recited above, we find the statements of the prosecutor adequately supported by the evidence. *People v. Burnett*, 27 Ill.2d 510, 190 N.E.2d 338.

Finally, defendant contends that the 13-to-14-year sentence is inconsistent with State law requiring indeterminate sentences.

■■ An indeterminate sentence is one which sets a difference between the minimum and maximum number of years a prisoner may serve, Ill.

---

* This situation is clearly distinguishable from that which existed in *People v. Moore*, 51 Ill.2d 79, 281 N.E.2d 294 (42484) which held that the denial of a transcript of a preliminary hearing at which defendant had testified and which a court reporter attended, denied defendant equal protection of the law. See also *Roberts v. La Valle*, 389 U.S. 40.

Rev. Stat. 1969, ch. 38, par. 1—7(e). With a difference of one year between the minimum and maximum in the present case, an indeterminate sentence was thus imposed. Defendant also argues that only a one-year difference between the minimum and maximum frustrates the purpose of the statute, and under ordinary circumstances we would not hesitate to agree. In our opinion, the spread between the minimum and maximum represents the trial judge's assessment of the defendant's potential for rehabilitation, a factor which he is required to take into consideration in determining the appropriate sentence. Ill. Rev. Stat. 1967, ch. 38, par. 1—2(c); and *People v. Ford*, 4 Ill.App.3d 291, 280 N.E.2d 728. In this case, however, defendant has demonstrated a stoic resistance to rehabilitation which could justify the trial judge's exercise of his discretion in the sentence meted out. We refer to the fact that this defendant was previously given sentences of 3 to 13 years on four armed robbery convictions, and 5-to-15-year sentences for burglary and two additional armed robberies. Despite the rehabilitation incentive afforded him by the low minimum sentences in each of these cases, defendant was required to serve 12½ years. Then, only six months after his release, he committed the present crime.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

LORENZ, P. J., and DRUCKER, J., concur.