THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD WAYNE BOOTH, Defendant-Appellant.

(No. 12085;

Fourth District—June 12, 1974.

John F. McNichols and J. Daniel Stewart, both of State Appellate Defender's Office, of Springfield, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Robert James Steigmann, Assistant State's Attorney, and Jerry Finney, Senior Law Student, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendant was charged in an indictment with one count of rape and one count of burglary. He was tried and found guilty, in a bench trial, on both charges. The trial court entered judgment on its verdict and sentenced defendant to an indeterminate term of 5 to 15 years. Defendant appeals.

Defendant urges the following on appeal. He was not proven guilty beyond a reasonable doubt; the trial court erred in refusing to grant his request for a new trial based upon purported newly-discovered evidence; and, finally, that the trial court erred in entering judgment on both the rape and burglary verdicts.

At trial, the complaining witness, Mrs. Gail Hunter, testified that on the evening of September 2, 1971, she was alone in her basement apartment in Champaign, Illinois. She sat down around 7 P.M. to read and about 20 minutes later she thought she saw someone looking at her through the living room window. An hour later, she again believed she saw someone looking at her and at that time she got up from her chair and observed a figure running away from the window.

She went into her bedroom, and put on her nightgown, and then laid on her bed and began to read. She fell asleep and slept for an hour to an hour and a half when she was awakened by noises coming from outside the bedroom. Immediately after awakening, she saw a man standing in the entrance of her bedroom, 8 to 10 feet away. She stated that the bedroom and living room lights illuminated the man and she observed the man's face for approximately 8 seconds. She described him as being 5'6" to 5'8", weighing around 140-150 lbs., wearing Levi bluejeans and a faded blue T-shirt with white short sleeves or a tie-dyed T-shirt. He was a small-boned man around 23 years old with dark hair, square jaw and sharp features. He was unshaven. She stated that at that time she was not wearing her glasses.

She began to scream as the man came towards her and lunged onto the bed. He turned her over on her back, and he hit her on the face. He held her down and removed her panties and began to rape her. She

kept her hands over her face during the attack except for a few seconds when she observed the man close up. He had a nylon stocking over his face but it did not distort his features. At close range she noted that his eyes were dark and that his breath smelled of stale liquor.

After the attacker had completed the rape, he left the room. Mrs. Hunter called the police. The time was around 9:51 P.M. At this juncture of her testimony, Mrs. Hunter identified the defendant as being her assailant. She continued to testify that she was then taken to the hospital by the authorities and examined by a physician.

The day following the incident Mrs. Hunter went to the Champaign Police Department and was shown a book of mug shots containing some 300-350 photos. On September 11, 1971, Mrs. Hunter again observed 7 or 8 additional photographs. On both occasions she positively identified the defendant.

Mrs. Hunter testified that she is a licensed practical nurse, and that while making rounds in the maternity ward in Mercy Hospital on November 28, 1971, she saw defendant sitting in the fathers' lounge. She stated that she eventually entered the room of defendant's wife and recognized the defendant as her attacker. She went to the nurse at the station to call her husband who in turn notified the authorities. This occurred around 10:30 A.M. Defendant was apprehended at 1:40 P.M. Mrs. Hunter subsequently picked defendant out of a six-man lineup. She testified that upon seeing defendant's face she fainted, and upon being revived she stated that defendant was the individual who had raped her.

The State called Dr. Lewis Trupin. He testified that upon examining Mrs. Hunter the night of the incident, he noticed an abrasion to her right temple and that there was evidence of a forcible entry into the vaginal area. He stated that a smear indicated the presence of spermatozoa. He further testified that Mrs. Hunter was extremely upset and overwrought. He prescribed a tranquilizer.

Officer William Jobe testified that he went to Mrs. Hunter's apartment on the night in question and noticed that she was extremely upset and apparently had been struck on the right temple. Upon investigation, he found that the rear entrance to the apartment had been forcibly opened; however, no physical evidence or fingerprints were found linking the defendant directly to the scene.

Detective Sergeant William Bates was called to testify by the State. He corroborated the fact that on September 3, 1971, Mrs. Hunter tentatively identified defendant's photo. Furthermore, Bates testified that on September 11, 1971, he brought over additional photos for her to iden-

tify. He stated that Mrs. Hunter identified defendant's picture, saying that it was the man that had raped her.

Detective Donald Evans testified that on November 28, 1971, he had an occasion to go to Mercy Hospital located in Urbana, Illinois. He stated that upon arriving at Mercy Hospital he had a conversation with Mrs. Hunter concerning the suspect who fit the description of her assailant. Evans testified that after he talked with Mrs. Hunter, he left the hospital and returned at approximately 1:40 P.M. with Sgt. Douglas. At around 2 P.M., Evans approached defendant and placed him under arrest for rape. Evans stated that defendant replied, "I could not have done it. I can prove where I was at." Evans said that he told defendant that he did not know how he could prove where he was at because he had not yet told him what the date was. Thereafter, he was taken to the station where he appeared in the six-man lineup and was identified by Mrs. Hunter.

Defendant advanced an alibi defense. He testified that he had been working on September 2, 1971, on a construction site on North Madison Avenue in Champaign. His regular work uniform was dark blue pants and a light blue shirt imprinted with the defendant's employer's name. He testified that he had never visited or worked in the Hunter apartment complex.

On the day in question, defendant stated that his wife picked him up from the job site. They returned home after grocery shopping around 6 P.M. After arriving at defendant's home, his mother and his wife fixed supper. He said he changed into a white T-shirt and brown cutoffs and the family ate supper around 7:30 P.M. No alcoholic beverages were served during the evening. After eating, defendant said that he worked on a TV set and his son's toy car in the garage.

Mr. Randall Cozad, defendant's father, corroborated defendant's testimony that he had been working at a construction site on North Madison Avenue on the day in question. Defendant's wife testified that she did pick defendant up after work and that he stayed home the entire evening. Defendant's mother and his wife both testified that although neither had defendant within their full view the entire evening, both stated that he had not left the premises at any time. The defendant, his mother, and wife, all testified that the entire family watched the news and weather report which appeared on television at 10 P.M. Shortly thereafter, defendant's mother left and defendant continued to work on a remodeling project until retiring around 1:30 A.M.

Defendant, his father, mother, and wife, all testified that defendant did not own or wear bluejeans or a tie-dyed T-shirt, and that defendant

only on very rare occasions consumed alcoholic beverages. They all testified that defendant was incapable of growing much facial hair. It was brought out that defendant was 5'10¼" tall and weighed 142 lbs.

At the conclusion of the second day of the bench trial, the court found defendant guilty of both rape and burglary.

Included in defendant's post-trial motion was an allegation that newly-discovered evidence of a very probative nature had been uncovered. This evidence would be used to explain the inculpatory statement made to Evans at the time of his arrest. At the hearing on the motion, defendant testified:

> "The reason why I said what I said was because I was told that my last case that I was sentenced 23 days on that from there on out I should have proof wherever I'm at and whom I am with from that date on."

Defendant further testified that his trial attorney was aware of the explanation but he did not want to bring it before the court due to the fact it would involve a communication to the court of other offenses, which might be prejudicial. The trial court denied defendant's post-trial motion for a new trial. After a pre-sentence hearing and sentencing, the defendant appealed.

Defendant contends that the State failed to establish his guilt beyond a reasonable doubt. Essentially, he urges that the identification testimony of Mrs. Hunter is not credible.

■■ The State must prove defendant's guilt beyond a reasonable doubt; however, the positive testimony of just one credible witness is enough to convict defendant, even if the testimony is contradicted by the accused. (*People v. Novotny,* 41 Ill.2d 401, 244 N.E.2d 182.) The fact that defendant's testimony and that of other defense witnesses conflicted with that of the State's principal witness creates a question of credibility for the trier of fact. In this case, the trier of fact has chosen to resolve the conflict in favor of the State. It is the function of the trial court as the trier of fact to ascertain the credibility of witnesses and its findings pertaining thereto will be disturbed only when the evidence of guilt is so improbable or unsatisfactory as to leave a reasonable doubt of guilt. *People v. Curry,* 56 Ill.2d 162, 306 N.E.2d 292.

Next, defendant contends he is entitled to a new trial because evidence adduced after trial would have changed the outcome of the trial. Defendant urges that the explanation given with regards to the remarks "I could not have done it. I can prove where I was at" was not given at trial because the defendant did not know the reliance that would be placed upon such remarks by the court. It is argued that a new trial should be

permitted so that defendant can explain the remarks in question. We cannot agree.

■■ An application for a new trial on the grounds of newly-discovered evidence is addressed to the sound discretion of the trial judge. (*People ex rel. Walker v. Pate*, 53 Ill.2d 485, 292 N.E.2d 387.) A denial thereof by the trial judge will not be disturbed upon review unless there is a showing of an abuse of discretion. It is clear that in order to warrant a new trial the new evidence must be conclusive or probably change the outcome on retrial. *People v. Reese*, 54 Ill.2d 51, 294 N.E.2d 288; *People v. Miner*, 17 Ill.App.3d 661, 307 N.E.2d 624.

■■■ The situation presented here is not one where the offered evidence was newly discovered. Defendant admits that the nondisclosure of the reason for his utterance when arrested was a calculated move on the part of his trial counsel. The evidence was intentionally withheld from the trial court as a result of a calculated trial tactic. Moreover, the evidence is not conclusive; therefore, the trial court's decision not to grant a new trial was not a manifest abuse of discretion.

■■ Finally, the defendant urges that his burglary conviction must be reversed because it arose out of the same transaction as the rape conviction. The trial court found defendant guilty of both charges, although only one sentence was imposed. Where, as here, two offenses occur but are not independently motivated or otherwise separable, it would have been improper to impose separate sentences. (*People v. Whittington*, 46 Ill.2d 405, 265 N.E.2d 679.) Likewise, it is also improper under such circumstances to enter two judgments of conviction. *People v. Lilly*, 56 Ill.2d 493, 309 N.E.2d 1; *People v. Leggett*, 2 Ill.App.3d 962, 275 N.E.2d 651.

The conviction for the offense of rape is affirmed. The conviction upon the offense of burglary is reversed and this cause is remanded to the circuit court of Champaign County with directions to issue an amended *mittimus*.

Affirmed in part, reversed in part, and remanded with directions.

SMITH, P. J., and SIMKINS, J., concur.