THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MILTON BROWN, Defendant-Appellant.

First District (1st Division)    No. 61669

Opinion filed August 23, 1976.

642

James J. Doherty, Public Defender, of Chicago (James L. Rhodes and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Milton Brown, was found guilty by a jury in the circuit court of Cook County of the offenses of rape and deviate sexual assault and sentenced to four to twelve years in the penitentiary. Defendant appeals, asserting (1) he was denied effective assistance of counsel, (2) he was not proved guilty beyond a reasonable doubt, (3) the trial court erred in allowing the State to introduce rebuttal testimony concerning a prior arrest of defendant, (4) the trial court erred in refusing to allow a State's witness to be called as a defense witness and in denying defendant a continuance to present a witness and (5) his convictions for both rape and deviate sexual assault were improper.

The complainant testified that at 7 p.m. on January 25, 1973, she was walking along a street in the city of Chicago with her three-year-old daughter. A man walked past them from the opposite direction, turned and came up behind complainant. He put a knife to her throat, told her not to make any noise and to turn around and start walking the other way. The man led her and her daughter to the enclosed gangway of an apartment building, where he unscrewed two light bulbs which were illuminating the area, shook a set of brass knuckles at complainant and asked if she knew what they were. He took complainant and her daughter into a small room off the gangway, forced her to lie down and remove one leg from her pants, committed an act of cunnilingus and then had sexual intercourse with her. Defendant testified that he was home at the time.

■■ Defendant argues that he was denied effective assistance of counsel because his privately retained attorney asked him on direct examination about a prior arrest.

The standards applicable to a claim of trial counsel's incompetence are stated in *People v. Torres* (1973), 54 Ill. 2d 384, 391-392, 297 N.E.2d 142, 146-147:

> "* * * The defendant's trial attorney was not appointed by the court but entered his appearance on behalf of the defendant. In such a case the court will not reverse a conviction because of the incompetency of counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or a sham. *People v. Redmond,* 50 Ill. 2d 313; *People v. Stanley,* 50 Ill. 2d 320; *People v. Green,* 36 Ill. 2d 349; *People v. Williams,* 26 Ill. 2d 190.
>
> * * *
>
> * * * Errors in strategy and of judgment on the part of counsel do not render the representation incompetent. (*People v. Somerville,* 42 Ill. 2d 1, 11; *People v. Washington,* 41 Ill. 2d 16, 21.)"

and in *People v. Gill* (1973), 54 Ill. 2d 357, 367, 297 N.E.2d 135, 141:

"*  *  * [I]n order to warrant the reversal of a conviction on grounds of inadequacy of representation the defendant must demonstrate the actual incompetence of counsel in carrying out his duties and, in addition, it must appear that 'substantial prejudice results therefrom, without which the outcome would probably have been different.' (*People v. Harper*, 43 Ill. 2d 368, 374.)"

Defense counsel's opening remarks to the jury demonstrate that part of his strategy was to "show that the defendant here is not the type of individual to get involved in this kind of sexual activity, that he never has been involved in this type of sexual activity." This strategy is also apparent at the beginning of defendant's presentation of evidence. The first witness called for the defense was defendant's fiancee. After a few brief preliminary questions, defense counsel asked:

"Q. Since you have known Mr. Brown, have you ever heard of him being convicted for any sex crimes?

A. No.

Q. Have you ever heard of him being involved in any problems with sex in general?

A. No.

Q. In other words, you never heard of any complaint lodged against him concerning his sexual behavior from anyone?

A. No, I haven't."

Defendant's fiancee repeated these denials during cross-examination. Contrary to these denials, defendant had, in fact, been arrested two years prior to this case for the offense of taking indecent liberties with a child. The child was his fiancee's daughter and his fiancee was the one who had signed the complaint.

Defendant was the next witness called to the stand. He was questioned at length, but not about the prior charge until after an overnight recess. When the trial resumed, defense counsel asked defendant about the prior arrest. While there is no indication before this point in the trial that defense counsel knew of the prior arrest, his questioning of defendant on the second day shows that he was aware of it at this time:

"Q. Were you ever arrested for a sex crime?

A. Yes, I was arrested.

Q. Was that a crime for indecent liberties with a child?

A. Yes, it was."

We can only assume that defense counsel was not told by defendant of the prior arrest before trial. It is inconceivable that he would have questioned defendant's fiancee about prior arrests had he known of the indecent liberties charge because his theory that defendant was not the type of person to be involved in this type of activity and had never been so involved was directly contradicted by the fact that defendant had once

been arrested for taking indecent liberties with a child. We must assume that he learned of the earlier complaint only after defendant's fiancee gave her false testimony. Upon learning of the facts, defense counsel was forced to change tactics. To lessen the impact of inevitable impeachment on rebuttal by the State, he must have felt that it was best to have defendant bring out the prior arrest and have him try to explain it away.

Defendant testified that the charge was unfounded because the girl had hurt herself by riding her bike without a seat on it and that the charge was dropped the morning after he was arrested. On rebuttal, the State introduced testimony that the earlier case was not disposed of until 2½ months after defendant's arrest when his fiancee decided against testifying.

■■ Whatever prejudice, if any, resulted to defendant because of the questioning about the prior arrest was precipitated by defendant himself. Defense counsel's strategy to portray defendant as a person with an unblemished record should have been apparent to defendant at least from his own attorney's opening remarks and certainly from the questioning of defendant's fiancee. If the strategy was based on an incorrect characterization of defendant, he knew it and it was his responsibility to correct it by informing his own lawyer of the facts. See *People v. Colon* (1974), 20 Ill. App. 3d 858, 866, 314 N.E.2d 664, 670.

Other than the claim regarding the questions about the prior arrest, no other alleged acts of incompetency by defense counsel are cited nor, in our view, could they be. Defense counsel filed and argued lengthy written pretrial motions to quash the arrest and suppress the lineup evidence and post trial motions for a new trial and in arrest of judgment. His conduct during all phases of the trial itself was also above criticism. As our discussion of the next contention of defendant will show, "considering the entire record here, even if one would assume serious deficiencies in the representation, it cannot be said that the outcome without them 'would probably have been different.' *People v. Harper*, 43 Ill. 2d 368, 374, 253 N.E.2d 451." *People v. Gill* (1973), 54 Ill. 2d 357, 367-68, 297 N.E.2d 135, 141.

■■ Defendant contends that the State failed to prove beyond a reasonable doubt that he had sexual intercourse and engaged in deviate sexual conduct with complainant by force and against her will. Ignoring the record as a whole, defendant has singled out certain facts which he believes show that the complainant willingly submitted to his advances. We find his contentions on this issue to be totally without merit. Typical of his argument is the assertion that complainant should have picked her three-year-old child up and run. He also points out that complainant did not scream, or kick a door, or knock on a window, even though the crime took place in an occupied apartment building which was located next to a

fire station. Defendant further maintains that because he did not display a weapon simultaneously with the acts of cunnilingus and intercourse, complainant must have willingly submitted to his actions.

The degree of force and the amount of resistance which must be shown before it can be said with certainty that the acts were forcible and against the will of the complainant depend on the totality of the facts of each case. (*People v. Taylor* (1971), 48 Ill. 2d 91, 98, 268 N.E.2d 865, 868.) As to the assertion that complainant should have run away, we only need to point out that, considering the disparity in size and strength of the parties (*People v. Sims* (1972), 5 Ill. App. 3d 727, 729, 283 N.E.2d 906, 908), it would be futile for a woman carrying a three-year-old child to try to run from a man who is five feet eleven inches tall, weighs 197 pounds and is unencumbered by anything but a knife and a set of brass knuckles. Useless and foolhardy resistance such as this is not required of a victim of a rape attack in order that she may avoid the charge that she was a willing participant. (*People v. Faulisi* (1962), 25 Ill. 2d 457, 461, 185 N.E.2d 211, 213; *People v. Appleby* (1968), 104 Ill. App. 2d 207, 214, 244 N.E.2d 395, 398.) She need not endanger her life by resisting where, as here, the attacker is armed with a deadly weapon (*People v. Faulisi* (1962), 25 Ill. 2d 457, 461, 185 N.E.2d 211, 213), and there is no requirement that she must subject herself to serious physical injury. (*People v. Sims* (1972), 5 Ill. App. 3d 727, 730, 283 N.E.2d 906, 908.) Defendant's theory that the complainant's willingness is shown by her failure to make an outcry is answered by the fact that the first and last words the attacker said to complainant were not to make any noise and she wouldn't get hurt. She was told to be quiet at least four times and she was told to keep quiet her child who was crying. In fact, repeatedly telling complainant to keep quiet was practically all he said to her. Any scream she might have made would have unnecessarily endangered the safety of her and her child. Any outcry is not necessary where the victim is restrained by fear of violence. (*People v. Lilly* (1973), 9 Ill. App. 3d 46, 49, 291 N.E.2d 207, 209.) As to the display of weapons, defendant would have us assume, which we will not do, that after he put the knife to complainant's neck and after he shook a set of brass knuckles at her he threw the weapons away; that complainant was somehow to have known that he no longer had them on him; and that therefore she should have tried to resist him physically. Defendant's reliance on *People v. Anderson* (1974), 20 Ill. App. 3d 840, 314 N.E.2d 651, is inappropriate; for in that case, while the attacker was allegedly claimed to have had a gun, the victim admitted that she never actually saw it.

■■ With reference to defendant's argument that he was not proved guilty beyond a reasonable doubt, the record discloses that complainant's identification was positive and that she had ample time, under good lighting conditions, to view the attacker. Even more convincing is the fact

that six weeks after the attack defendant drove alongside the complainant while she was walking down the street, again with her daughter, and yelled, "Hey * * *. Don't you remember me? I am the fellow that raped you." Complainant took down his license number and the police were able to arrest defendant by tracing the car to him. Defendant was proved guilty beyond a reasonable doubt.

Defendant contends that he was denied a fair trial by the questions the prosecutor asked him on cross-examination and by the State's presentation of a rebuttal witness. The questions asked and the rebuttal witness' testimony involved the prior indecent liberties charge which had been brought out by defense counsel. Defendant argues that the State was attempting to place before the jury the idea that defendant had a propensity to commit this type of crime.

■■ If this was the goal of the prosecutor, it would indeed have been improper. (*People v. Lehman* (1955), 5 Ill. 2d 337, 342, 125 N.E.2d 506, 509.) However, we believe that the State's cross-examination of defendant and the presentation of a rebuttal witness were proper because they were directed at defendant's credibility, which he placed in issue by voluntarily taking the stand. Defendant precipitated the cross-examination and rebuttal testimony concerning the prior arrest by introducing that matter himself during direct examination and he cannot now complain because the State pursued a line of inquiry which he himself initiated. *People v. Briggman* (1974), 21 Ill. App. 3d 747, 753-54, 316 N.E.2d 121, 127.

*People v. Cage* (1966), 34 Ill. 2d 530, 216 N.E.2d 805, *People v. Carr* (1974), 20 Ill. App. 3d 838, 314 N.E.2d 374, *People v. Fiorita* (1930), 339 Ill. 78, 170 N.E. 690, and *People v. Harges* (1967), 87 Ill. App. 2d 376, 231 N.E.2d 650, cited by defendant, are inapposite, for in those cases the State and not the defendants introduced the facts of the prior criminal activity of each defendant. *People v. Polenik* (1950), 407 Ill. 337, 95 N.E.2d 414, upon which defendant heavily relies, is clearly distinguishable. In that case, the defense attorney was faced with the State's presentation of the defendant's probation and parole officer as a witness. The calling of this witness implicitly showed the defendant had a criminal past. Defense counsel, therefore, brought out what the prior crimes were. The State, then, despite several adverse rulings, put into evidence the details of the prior crime and other crimes not mentioned by defense counsel. Further, in the cross-examination of defendant there the State again went into his prior crimes even though the subject was not opened up in the direct examination of defendant.

Here, defendant himself brought out not merely the fact of the prior arrest, but also an extensive detailing of the circumstances surrounding it. That in itself permitted the State to inquire further into the prior arrest. In addition, defendant's testimony and that of his fiancee contained

misstatements relating to the prior arrest. Incorrect testimony given by defendant is open to impeachment and cross-examination as with any other witness. (*People v. Clark* (1973), 9 Ill. App. 3d 998, 1003, 293 N.E.2d 666, 670.) Defendant claimed during direct examination that he was released the day after the arrest, that the police forced his fiancee to sign the complaint, and that the child had injured herself on a bike. These were the facts the State inquired into during cross-examination and these were the facts contradicted by the rebuttal witness, who was the police officer who had arrested defendant on the prior charge. Defendant was not denied a fair trial because of the cross-examination or because of the presentation of the rebuttal witness. Both reflected on the credibility of defendant and his fiancee, who testified that defendant was sick and at home at the time of the incident.

■■ Defendant also argues that the trial court abused its discretion in denying defendant's request (1) for a continuance to produce a defense witness and (2) to allow two of the State's witnesses to be recalled during the defense portion of the case.

"The granting or denial of a continuance to obtain evidence or procure a witness is within the discretionary power of the trial court. *People v. Allgauer*, 114 Ill. App. 2d 405, 408, 252 N.E.2d 671. When reviewing the exercise of the court's discretion, this court must determine whether defendant had acted diligently in his attempts to obtain the evidence (*People v. Thomas*, 4 Ill. App. 3d 535, 537, 281 N.E.2d 447), whether the evidence would be material to the case and might affect its outcome (*People v. Douglas*, 130 Ill. App. 2d 938, 942, 267 N.E.2d 43), and whether defendant has been prejudiced in his right to a fair trial. (*People v. Weaver*, 8 Ill. App. 3d 299, 304, 290 N.E.2d 691)." *People v. Robinson* (1973), 13 Ill. App. 3d 506, 510, 301 N.E.2d 55, 57.

Defendant asked for a continuance to produce a friend of his who, according to defendant, was with him until 6:30 on the night of the crime. Since the attack occurred at 7 o'clock only one block from defendant's residence, the friend's testimony would have been irrelevant. Defendant stated this in his own words during cross-examination:

"Q. Willie left the house at what time that evening?

A. I would think 6:30.

Q. The alleged crime is to have occurred between 7:00 and 8:00 o'clock. So, therefore, Willie wouldn't even know about that, correct?

A. I would say that's correct, yes."

Defendant testified that he was home the day of the attack because he was ill; his fiancee also so testified. Defendant claims that the friend would have also told the jury that defendant was ill the day of the incident. Because the friend's testimony in this regard would have been merely

corroborative at best, defendant was not prejudiced by the failure of the friend to testify. See *People v. Drake* (1974), 20 Ill. App. 3d 762, 766-67, 314 N.E.2d 532, 535-36.

The denial of defendant's request for a continuance was also proper because defendant had adequate time to produce the witness. After defendant's fiancee had testified during the afternoon of the third day of the trial, defendant asked for a short recess to wait for the friend to arrive from his job. As the friend had not appeared after the recess, defendant took the stand and testified the rest of that day and into the next morning, when again the friend was absent when called. No further continuance was requested.

■■ We also find no abuse of discretion in the trial court's refusal to allow defendant to recall Officer Curtis, one of the police officers who arrested defendant. Defendant's fiancee initially testified that she didn't remember talking to him at the police station, but then admitted telling him that defendant was at work on the day of the crime. She then testified that she later remembered defendant was off work that day. This witness could have added no material testimony. He could only reiterate what the fiancee said at the police station. This would have been cumulative and possibly even prejudicial to defendant because it would have emphasized before the jury the fact that the fiancee had changed her story.

■■ Defendant also sought to recall Officer Harrington, the police officer who returned to the scene of the attack with complainant, but the trial court never ruled on the request. Consequently, there is nothing before this court. (*Walls v. Jul* (1969), 118 Ill. App. 2d 242, 251, 254 N.E.2d 173, 177.) We also note that neither of the two police officers appeared on defendant's list of possible witnesses as required by Supreme Court Rule 413(d)(i). (Ill. Rev. Stat. 1973, ch. 110A, par. 413(d)(i).) A permissible sanction for failure to so list is to exclude the testimony of the witness. (Ill. Rev. Stat. 1973, ch. 110A, par. 415(g).) Such exclusion is within the discretion of the trial court, whose discretion will only be reviewed upon a party's showing of prejudice. (*People v. Steel* (1972), 52 Ill. 2d 442, 450, 288 N.E.2d 355, 360.) Defendant has failed to show prejudice here.

■■ Defendant's final contention is that his convictions for both rape and deviate sexual assault were improper, because the two acts were neither independently motivated nor otherwise separable and both arose out of the same course of conduct. Defendant's argument is without merit. The applicable sections of the Criminal Code of 1961 provide (Ill. Rev. Stat. 1975, ch. 38, pars. 11—1, 11—2, 11—3):

> "§11—1. Rape.) (a) A male person of the age of 14 years and upwards who has sexual intercourse with a female, not his wife, by force and against her will, commits rape. * * *
>
> (b) Sexual intercourse occurs when there is any penetration of the female sex organ by the male sex organ.

* * *

§11—2. Deviate Sexual Conduct.] 'Deviate sexual conduct', for the purpose of this Article, means any act of sexual gratification involving the sex organs of one person and the mouth or anus of another.

§11—3. Deviate Sexual Assault.) (a) Any person of the age of 14 years and upwards who, by force or threat of force, compels any other person to perform or submit to any act of deviate sexual conduct commits deviate sexual assault."

In *People v. Oldsby* (1970), 119 Ill. App. 2d 412, 417, 256 N.E.2d 27, 30, the court said:

" * * * The offenses charged [attempted rape and deviate sexual conduct] are by definition dissimilar and could only be committed by separate and distinct acts of the defendant, regardless of any time and space differences that may have occurred."

In *People v. Williams* (1975), 60 Ill. 2d 1, 13-14, 322 N.E.2d 819, 826-827, the court stated that while "a person may not be convicted of multiple offenses arising out of the same act or the same conduct" (as in *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, cited by defendant), multiple convictions are permissible where "more than one offense arises from a series of closely related acts and the crimes are clearly distinct and require different elements of proof."

"* * * The test, therefore, to be applied then is not whether the conduct was a product of a singleminded purpose or single motive, or 'the same transaction' but rather whether we are considering 'separate offenses', none of which is included as a lesser offense within a greater offense." (*People v. Porter* (1973), 13 Ill. App. 3d 893, 902, 300 N.E.2d 814, 821; compare *Porter* and *People v. Moore* (1972), 51 Ill. 2d 79, 281 N.E.2d 294, with *People v. Booth* (1974), 20 Ill. App. 3d 88, 312 N.E.2d 736, cited by defendant.)

The complainant testified unequivocally that the acts of cunnilingus and intercourse were separate and distinct, each act lasting for an extended period of time. Separate convictions under similar circumstances have been upheld in *People v. Scott* (1973), 14 Ill. App. 3d 211, 302 N.E.2d 146 (and cases cited therein), *aff'd*, 57 Ill. 2d 353, 312 N.E.2d 596 (1974), and in *People v. Moore* (1972), 51 Ill. 2d 79, 281 N.E.2d 294 (and cases cited therein).

Defendant's convictions for both rape and deviate sexual assault were proper.

Judgment affirmed.

GOLDBERG, P. J., and BURKE, J., concur.